Filed 4/24/14  P. v. Uribe CA5

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ALFONSO URIBE,<br><br>    Defendant and Appellant. | F067245<br><br>(Super. Ct. No. CF96555873)<br><br><br>**OPINION** |

---

## <u>THE COURT</u>[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan B. Conklin, Judge.

John Hargreaves, under appointment by the Court of Appeal, for Defendant and Appellant.

---

[*]    Before Levy, Acting P.J., Detjen, J. and LaPorte, J.[†]

[†]    Judge of the Superior Court of Kings County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Kari Ricci Mueller, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## **INTRODUCTION**

"On November 6, 2012, the voters approved Proposition 36, the Three Strikes Reform Act of 2012, which amended [Penal Code] sections 667 and 1170.12 and added [Penal Code] section 1170.126 (hereafter the Act [or Proposition 36]).[1]  The Act changes the requirements for sentencing a third strike offender to an indeterminate term of 25 years to life imprisonment.  Under the original version of the three strikes law a recidivist with two or more prior strikes who is convicted of any new felony is subject to an indeterminate life sentence.  The Act diluted the three strikes law by reserving the life sentence for cases where the current crime is a serious or violent felony or the prosecution has pled and proved an enumerated disqualifying factor.  In all other cases, the recidivist will be sentenced as a second strike offender.  (§§ 667, 1170.12.)  The Act also created a postconviction release proceeding whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety.  (§ 1170.126.)" (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167-168.)

Shortly after the Act went into effect, Alfonso Uribe (defendant), an inmate serving a term of two years plus 25 years to life in prison following conviction of a felony that was not violent (as defined by § 667.5, subd. (c)) or serious (as defined by § 1192.7, subd. (c)), filed a petition to recall sentence, seeking resentencing under the

---

**1**     Further statutory references are to the Penal Code unless otherwise stated.

2.

Act.  The trial court determined defendant did not qualify (was ineligible) for resentencing and denied the petition.  Defendant now appeals.

We hold:  (1) A trial court's order finding a defendant not eligible for resentencing is appealable; (2) A person convicted of being a violent offender in possession of a firearm is not automatically disqualified from resentencing by virtue of that conviction; rather, the record of conviction must be examined to ascertain the existence of a disqualifying factor; and (3) Disqualifying factors need not be pled and proved to a jury beyond a reasonable doubt.  The trial court here erroneously found automatic disqualification, but the record on appeal establishes defendant was armed during the commission of his current offense.  We affirm.

## FACTS AND PROCEDURAL HISTORY[2]

On August 17, 1995, officers served a search warrant at an apartment in Fresno.  When officers entered, they found Irma Garcia in the bathroom and defendant on a ladder in Garcia's bedroom, attempting to climb out a window.  Officers took defendant into custody and removed him from the scene.

Garcia was detained in the kitchen.  Asked by a parole officer whether there were any guns in the apartment, Garcia stated either that when officers entered, defendant had been sitting on the couch, holding a small handgun, or that defendant had placed something under the couch where he was sitting.  A handgun was found under a couch cushion where Garcia said defendant had been seated.

In Garcia's bedroom, officers found men's clothing and paperwork belonging to defendant.  Garcia said defendant had been living with her for two weeks.  Garcia also said the weapons found in the apartment belonged to defendant.

---

[2]     The facts of defendant's current offense and portions of the procedural history are taken from this court's nonpublished opinion in *People v. Uribe* (Feb. 11, 1999, F028340).

One to two hours after officers arrived at the apartment, the telephone rang. Garcia was allowed to answer it while an officer listened on another telephone. The officer heard defendant ask Garcia whether anyone was listening. Defendant told Garcia that if questioned, she should not say anything. He asked her twice if she knew what time it was — a phrase that is an implied threat among parolees — and told her to remember what happened to a female informant.

At trial, Garcia testified all the weapons found in the apartment belonged to her. She denied defendant had been staying with her. She claimed she told the officers the gun found in the apartment belonged to her, but changed her story and said the gun was defendant's after, she claimed, she had been threatened with being arrested for child endangerment.

On April 9, 1997, a jury convicted defendant of being a violent offender in possession of a firearm. (Former § 12021.1, subd. (a), see now § 29900, subd. (a)(1).)[3] Defendant then admitted being previously convicted of a felony, and the court found true two prior prison term enhancements (§ 667.5, subd. (b)) and allegations defendant had two prior convictions within the meaning of the three strikes law (§§ 667, subds. (e)-(i), 1170.12). On May 9, 1997, the court sentenced defendant to two years plus 25 years to life in prison.

---

[3]     The abstract of judgment shows defendant was convicted of being a felon in possession of a firearm, in violation of former section 12021, subdivision (a)(1) (now § 29800, subd. (a)(1)). It is apparent from defendant's petition for recall of sentence, the first amended information, and the appellate opinion, that this statutory designation is in error.

Former section 12021.1, subdivision (a) was repealed as of January 1, 2012, but its provisions were reenacted without substantive change as section 29900, subdivision (a)(1). (*People v. Sanders* (2012) 55 Cal.4th 731, 734, fn. 2.) Because defendant was convicted under the repealed statute, which was only renumbered without substantive change, we refer to former section 12021.1, subdivision (a), throughout this opinion for clarity and convenience. For brevity, we will not use the word "former" and will sometimes omit the subdivision.

On December 11, 2012, defendant filed a petition for recall of sentence pursuant to section 1170.126. The trial court made a preliminary finding defendant was eligible for resentencing, and ordered briefing on various issues. The People responded by opposing the petition on the ground defendant was ineligible for resentencing because the record of conviction showed he was armed with a firearm during commission of his current offense.

On May 10, 2013, the court ruled defendant was statutorily ineligible for resentencing because of his offense of conviction. The court found that section 1170.126 was poorly drafted. In order to interpret inconsistent and ambiguous language therein, the court considered the electorate's intent and concluded that intent was to exclude from consideration any individual petitioning for resentencing for any weapon-related felony.

## DISCUSSION

### I. The trial court's ruling is appealable.

Both parties say the trial court's denial of defendant's petition is appealable. We agree.[4] The right of appeal is statutory and "'a judgment or order is not appealable unless expressly made so by statute.'" (*People v. Mazurette* (2001) 24 Cal.4th 789, 792.) Although section 1170.126 does not specifically authorize an appeal from the denial of a petition or motion for resentencing, section 1237 provides that a defendant may appeal "[f]rom a final judgment of conviction" (*id.*, subd. (a)) or "[f]rom any order made after judgment, affecting the substantial rights of the party" (*id.*, subd. (b)). First, the trial

---

[4] The appealability issue is currently pending before the state Supreme Court. (E.g., *People v. Leggett* (2013) 219 Cal.App.4th 846, review granted Dec. 18, 2013, S214264 [concluding denial is not appealable if petition was erroneously filed by individual whose sentence is based on conviction for serious or violent felony, but is appealable in all other instances]; *Teal v. Superior Court* (2013) 217 Cal.App.4th 308, review granted July 31, 2013, S211708 [concluding denial is nonappealable because Act confers no substantial rights on eligibility issue]; *People v. Hurtado* (2013) 216 Cal.App.4th 941, review granted July 31, 2013, S212017 [concluding denial is appealable because Act confers substantial right].)

court's denial of defendant's petition was an order made after judgment since, in a criminal case, judgment is synonymous with the imposition of sentence. (*Fadelli Concrete Pumping, Inc. v. Appellate Department* (1995) 34 Cal.App.4th 1194, 1200.) Sentence was imposed for defendant's current offense in 1997. Second, a finding of eligibility is a prerequisite to the trial court having the power to exercise resentencing discretion. If the trial court determines the inmate is ineligible, the inmate has no further opportunity to be resentenced as a second strike offender. The eligibility finding, therefore, affects the inmate's substantial rights. (See *People v. Totari* (2002) 28 Cal.4th 876, 880-887 [although § 1016.5 (requiring a defendant to be advised of the potential adverse immigration consequences resulting from his or her conviction before entering a plea of guilty or nolo contendere) does not expressly authorize an appeal from a trial court's denial of motion to vacate a judgment for failure to so advise, such an order is appealable].)

II. **Defendant was not automatically disqualified from resentencing by his current conviction for being a felon in possession of a firearm; rather, the record of conviction must be examined to determine whether defendant was "armed with a firearm" during commission of that offense.**

Insofar as is pertinent to this appeal, in order for an inmate to be eligible for resentencing under the Act, his or her current sentence cannot have been "imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12." (§ 1170.126, subd. (e)(2).) Thus, an inmate is disqualified from resentencing if, inter alia, "[d]uring the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).)

"[A]rmed with a firearm" has been statutorily defined and judicially construed to mean having a firearm available for use, either offensively or defensively. (E.g.,

6.

§ 1203.06, subd. (b)(3); Health & Saf. Code, § 11370.1, subd. (a); *People v. Bland* (1995) 10 Cal.4th 991, 997 (*Bland*) [construing § 12022].)  "The enacting body is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted" (*People v. Weidert* (1985) 39 Cal.3d 836, 844), "and to have enacted or amended a statute in light thereof" (*People v. Harrison* (1989) 48 Cal.3d 321, 329). "This principle applies to legislation enacted by initiative.  [Citation.]" (*People v. Weidert*, *supra*, at p. 844.)

Where, as here, "the language of a statute uses terms that have been judicially construed, '"the presumption is almost irresistible"' that the terms have been used '"in the precise and technical sense which had been placed upon them by the courts."' [Citations.]  This principle [likewise] applies to legislation adopted through the initiative process.  [Citation.]" (*People v. Weidert, supra,* 39 Cal.3d at pp. 845-846.)  Accordingly, we conclude the electorate intended "armed with a firearm," as that phrase is used in the Act, to mean having a firearm available for offensive or defensive use.

Defendant's current conviction was for violating section 12021.1, subdivision (a), which, at all times pertinent to this appeal, has made it a felony for a person previously convicted of a "violent offense," as enumerated in former section 12021.1, subdivision (b) (see now § 29905) to own or have in his or her possession or under his or her custody or control, any firearm.  The elements of this offense are conviction of an enumerated crime and ownership or knowing possession, custody, or control of a firearm. (*People v. Sanders, supra,* 55 Cal.4th at p. 738, fn. 7; *People v. Snyder* (1982) 32 Cal.3d 590, 592; *People v. Jeffers* (1996) 41 Cal.App.4th 917, 922.)  "A defendant has actual possession when the weapon is in his immediate possession or control.  He has constructive possession when the weapon, while not in his actual possession, is nonetheless under his dominion and control, either directly or through others. [Citations.]" (*People v. Peña* (1999) 74 Cal.App.4th 1078, 1083-1084.)  "Implicitly, the

crime is committed the instant the [violent offender] in any way has a firearm within his control." (*People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1410, italics omitted.)

A firearm can be under a person's dominion and control without it being available for use. For example, suppose a parolee's residence (in which only he lives) is searched and a firearm is found next to his bed. The parolee is in possession of the firearm, because it is under his dominion and control. If he is not home at the time, however, he is not armed with the firearm, because it is not readily available to him for offensive or defensive use. Accordingly, possessing a firearm does not necessarily constitute being armed with a firearm.

The trial court correctly noted that subdivision (e)(2) of section 1170.126 is not a model of clarity, at least insofar as the disqualifying factors contained in sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii) are concerned. Under the literal language of section 1170.126, subdivision (e)(2), an inmate is disqualified from resentencing if his or her current sentence was imposed for a specified *offense*. Yet, again as the trial court observed, sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii) do not contain actual *offenses*. Rather, the language of those provisions is more akin to what is usually found in enhancements. In light of this uncertainty and ambiguity, the court properly turned to the electorate's intent to resolve the eligibility question. We do likewise.

"In interpreting a voter initiative like [the Act], we apply the same principles that govern statutory construction. [Citation.]" (*People v. Rizo* (2000) 22 Cal.4th 681, 685.) "'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]'" (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276.) The issue, being one of the interpretation of a statute and its applicability to a given situation, is a question of law we review independently. (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332; *Southern California Edison Co. v.*

8.

*State Board of Equalization* (1972) 7 Cal.3d 652, 659, fn. 8; see *People v. Cromer* (2001) 24 Cal.4th 889, 894.)

"In determining intent, we look first to the words themselves.  [Citations.]  When the language is clear and unambiguous, there is no need for construction.  [Citations.]  When the language is susceptible of more than one reasonable interpretation, however, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.  [Citations.]"  (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1007-1008.)  We also "'refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.'  [Citation.]"  (*People v. Rizo, supra,* 22 Cal.4th at p. 685.)  "Using these extrinsic aids, we 'select the construction that comports most closely with the apparent intent of the [electorate], with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.'  [Citation.]"  (*People v. Sinohui* (2002) 28 Cal.4th 205, 212.)  "'"The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible.  [Citation.]"'"  (*People v. Mohammed* (2008) 162 Cal.App.4th 920, 928.)  "'[W]e do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness."  [Citation.]'  [Citation.]"  (*Horwich v. Superior Court, supra,* 21 Cal.4th at p. 276.)

Finally, we take into account the rule of lenity.  "'That rule generally requires that "ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation.  But … 'that rule applies "only if two reasonable interpretations of the statute stand in relative equipoise."  [Citation.]'  [Citations.]"  [Citations.]'  [Citation.]  'The rule of lenity does

9.

not apply every time there are two or more reasonable interpretations of a penal statute. [Citation.] Rather, the rule applies "'only if the court can do no more than guess what the legislative body intended; there must be an *egregious* ambiguity and uncertainty to justify invoking the rule.'" [Citation.]' [Citation.]" (*People v. Nuckles* (2013) 56 Cal.4th 601, 611.) "Further, ambiguities are not interpreted in the defendant's favor if such an interpretation would provide an absurd result, or a result inconsistent with apparent legislative intent. [Citation.]" (*People v. Cruz* (1996) 13 Cal.4th 764, 783.)

An examination of the statutory scheme as a whole supports the conclusion the phrase "[d]uring the commission of the current offense, the defendant … was armed with a firearm," as used in sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii), and as disqualifies an inmate from resentencing pursuant to section 1170.126, subdivision (e)(2), extends to situations in which the defendant was convicted of violating section 12021.1 *if* the defendant had the firearm he or she was convicted of possessing available for use, either offensively or defensively. A conviction for violating section 12021.1 is insufficient, standing alone, to disqualify a defendant. Rather, the record of conviction must establish arming or one of the other disqualifying factors.

The purpose of the three strikes law has been variously stated as being "'to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses'" (*In re Young* (2004) 32 Cal.4th 900, 909) and "to promote the state's compelling interest in the protection of public safety and in punishing recidivism" (*People v. Gipson* (2004) 117 Cal.App.4th 1065, 1070). Although the Act "diluted" the three strikes law somewhat (*People v. Yearwood, supra,* 213 Cal.App.4th at p. 167), "[e]nhancing public safety was a key purpose of the Act" (*id*. at p. 175).

In enacting section 1170.126 as part of Proposition 36, the issue before the voters was not whether a defendant could or should be punished more harshly for a particular

aspect of his or her offense, but whether, having already been found to warrant an indeterminate life sentence as a third strike offender, he or she should now be eligible for a lesser term. By including as a disqualifying factor an inmate's mere intent, during commission of the current offense, to cause great bodily injury to another person, the electorate signaled its own intent that disqualifying conduct not be limited to what is specifically punishable as an offense or enhancement. Apparently recognizing the maxim *expressio unius est exclusio alterius* — the expression of some things in a statute necessarily means the exclusion of other things not expressed (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 852) — voters rendered ineligible for resentencing not only narrowly drawn categories of third strike offenders who committed particular, specified offenses or types of offenses, but also broadly inclusive categories of offenders who, during commission of their crimes — and regardless of those crimes' basic statutory elements — used a firearm, were armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person.

That our construction of the pertinent statutes comports with voters' intent is supported by the ballot materials related to Proposition 36. We recognize the "OFFICIAL TITLE AND SUMMARY" stated in part that the initiative "[c]ontinues to impose life sentence penalty if third strike conviction was for certain nonserious, non-violent sex or drug offenses *or involved firearm possession*." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) official title and summary, p. 48, italics added.) Other portions of the materials retreated from such a sweeping pronouncement, however. In summarizing then-existing law, the legislative analysis of Proposition 36 listed, as examples of violent felonies, murder, robbery, and rape; as felonies that were serious but not violent, assault with intent to commit robbery; and as felonies not classified as violent or serious, grand theft (not involving a firearm) and possession of a controlled substance. (Voter Information Guide, Gen. Elec., *supra*, analysis of Prop. 36 by Legis. Analyst, p. 48.) In summarizing how the initiative measure would shorten sentences for some

11.

third strikers, the Legislative Analyst explained there would be some exceptions to the shorter sentence: "Specifically, the measure requires that if the offender has committed certain new or prior offenses, including *some* drug-, sex-, and *gun-related felonies*, he or she would still be subject to a life sentence under the three strikes law." (*Id*. at p. 49, italics added.) The legislative analysis further described how certain current third strikers would be resentenced, but explained that Proposition 36 "limits eligibility for resentencing to third strikers whose current offense is nonserious, non-violent, and who have not committed specified current and prior offenses, such as *certain* drug-, sex-, and *gun-related felonies*." (Voter Information Guide, Gen. Elec., *supra*, at p. 50, italics added.)

In their "ARGUMENT IN FAVOR OF PROPOSITION 36," the measure's proponents spoke in terms of making the punishment fit the crime, saving California money, and making room in prison for dangerous felons. (Voter Information Guide, Gen. Elec., *supra*, argument in favor of Prop. 36, p. 52.) In their "REBUTTAL TO ARGUMENT AGAINST PROPOSITION 36," the proponents stated, in part: "Prop. 36 requires that murderers, rapists, child molesters, *and other dangerous criminals* serve their full sentences. [¶] … [¶] Today, dangerous criminals are being released early from prison because jails are overcrowded with *nonviolent offenders who pose no risk to the public*. Prop. 36 prevents dangerous criminals from being released early. *People convicted of shoplifting a pair of socks, stealing bread or baby formula don't deserve life sentences*." (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument against Prop. 36, p. 53, original italics omitted, italics added.)

Section 1 of the proposed law found and declared:

> "The People enact the Three Strikes Reform Act of 2012 to restore the original intent of California's Three Strikes law — imposing life sentences for *dangerous criminals* like rapists, murderers, and child molesters.

"This act will:

"(1) Require that murderers, rapists, and child molesters serve their full sentences — they will receive life sentences, even if they are convicted of a new minor third strike crime.

"(2) Restore the Three Strikes law to the public's original understanding by requiring life sentences only when a defendant's current conviction is for a violent or serious crime.

"(3) Maintain that repeat offenders convicted of *non-violent, non-serious crimes like shoplifting and simple drug possession* will receive twice the normal sentence instead of a life sentence.

"(4) Save hundreds of millions of taxpayer dollars every year for at least 10 years. The state will no longer pay for housing or long-term health care for elderly, *low-risk, non-violent inmates* serving life sentences for *minor crimes*.

"(5) Prevent the early release of dangerous criminals who are currently being released early because jails and prisons are overcrowded with *low-risk, non-violent inmates* serving life sentences for *petty crimes*." (Voter Information Guide, Gen. Elec., *supra*, text of proposed law, § 1, p. 105, italics added.)

The foregoing materials expressly distinguished between dangerous criminals who were deserving of life sentences, and petty criminals (such as shoplifters and those convicted of simple drug possession) who posed little or no risk to the public and did not deserve life sentences. Although arguably the materials implied virtually any level of firearm involvement would subject a person to a life sentence, we cannot simply look to these materials without taking into account the actual language of the enactment. To conclude, based on the materials, that inmates convicted of offenses involving mere possession of a firearm are ineligible for resentencing, would read out of existence voters' specification, in the statutory language itself, that disqualification under section 1170.126, subdivision (e)(2) is limited to situations in which, "[d]uring the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person."

13.

(§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).) Although the literal language of a statute does not prevail if it conflicts with the lawmakers' intent (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735; *People v. Belton* (1979) 23 Cal.3d 516, 526), it is nevertheless the most reliable indicator of that intent (*City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 919). It cannot be ignored. (See, e.g., *Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063; *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387.)

It is clear the electorate's intent was not to throw open the prison doors to *all* third strike offenders whose current convictions were not for serious or violent felonies, but only to those who were perceived as posing little or no risk to the public. A felon who has been convicted of two or more serious and/or violent felonies in the past, and most recently had a firearm readily available for use, simply does not pose little or no risk to the public. "[T]he threat presented by a firearm increases in direct proportion to its accessibility. Obviously, a firearm that is available for use as a weapon creates the very real danger it will be used." (*People v. Mendival* (1992) 2 Cal.App.4th 562, 573.) The same cannot necessarily be said about a firearm that is merely under the dominion and control of a person previously convicted of a felony. For instance, a firearm passed down through family members and currently kept in a safe deposit box by one previously convicted of a violent offense would be under his or her dominion and control, but would present little or no real danger. Thus, the trial court erred by concluding defendant's offense, for possessing a firearm as a violent offender, placed him within the meaning of "armed" for purposes of section 1170.126.

The People implicitly concede the trial court erred by suggesting all offenses involving firearm possession disqualify an inmate from resentencing under the Act, but argue reversal is not required because the facts underlying defendant's conviction demonstrate he was in fact armed with a firearm during commission of his current

offense. In support of this claim, the People rely on this court's opinion in defendant's direct appeal.

We agree that we (and trial courts) may examine the record of conviction to determine the existence of disqualifying factors. We see no practical difference between examining the entire record of conviction to ascertain whether, for example, an out-of-state conviction qualifies as a prior serious felony conviction under California law, which is permitted (*People v. Woodell* (1998) 17 Cal.4th 448, 450-451), and doing so to determine whether an inmate is disqualified from resentencing under the Act.

"[T]he record of the conviction is not limited to the trial court record but extends to the appellate court record, including the appellate opinion." (*People v. Woodell, supra,* 17 Cal.4th at p. 451, italics omitted.) The trial testimony recited in our opinion on defendant's direct appeal revealed that just before officers entered the apartment in which defendant was located, defendant was sitting on the couch, holding a handgun. After defendant was removed from the scene, a handgun was found under a couch cushion where defendant had been sitting. Accordingly, the record established defendant had a firearm available for offensive or defensive use.[5]

Defendant does not dispute our factual reading of the record, but argues "arming" requires an underlying felony other than mere possession, and the firearm possession must be "tethered" or have a "facilitative nexus" to that offense. The problem with defendant's argument is that we are not concerned here with imposition of an arming *enhancement* — an additional term of imprisonment added to the base term, which

---

[5]    We caution that here, the facts in the appellate opinion were derived from the evidence presented at trial. Although part of the record of conviction, the appellate opinion will not necessarily be relevant or admissible in its entirety. (*People v. Woodell, supra,* 17 Cal.4th at pp. 457-460.) This may be especially true where the facts recited therein have their source in the probation officer's report rather than the trial evidence. (See *People v. Trujillo* (2006) 40 Cal.4th 165, 180-181; *People v. Reed* (1996) 13 Cal.4th 217, 220, 230-231.)

cannot be imposed until and unless an accused is convicted of a related substantive offense. (*People v. Dennis* (1998) 17 Cal.4th 468, 500; see *People v. Izaguirre* (2007) 42 Cal.4th 126, 134.)

In *Bland*, *supra*, 10 Cal.4th 991, the California Supreme Court construed the enhancement contained in section 12022, which imposes an additional term of imprisonment for anyone "armed with a firearm in the commission of" a felony. The court concluded that "a defendant convicted of a possessory drug offense [is] subject to this 'arming' enhancement when the defendant possesses both drugs and a gun, and keeps them together, but is not present when the police seize them from the defendant's house[.]" (*Bland*, *supra*, at p. 995.) The court elaborated:

> "[C]ontemporaneous possession of illegal drugs and a firearm will satisfy the statutory requirement of being 'armed with a firearm in the commission' of felony drug possession only if the evidence shows a nexus or link between the firearm and the drugs. The federal courts, in interpreting the federal counterpart to California's weapons enhancement law [citation], have described this link as a 'facilitative nexus' between the drugs and the gun. [Citation.] Under federal law, which imposes specified prison terms for using or carrying a firearm '"during and in relation to"' a crime of drug trafficking, 'the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence.' [Citation.] So too in California.

> "… [F]or a defendant *to be subject to additional punishment for being armed with a firearm*, California law requires the 'arming' to be 'in the commission or attempted commission' of the underlying felony. (§ 12022, subd. (a)(1).) With respect to felony drug possession, a defendant is armed 'in the commission' of that crime so long as the defendant had the firearm available for use in furtherance of the drug offense at some point during the defendant's possession of the drugs. Thus, by specifying that the added penalty applies only if the defendant is armed with a firearm 'in the commission' of the felony offense, section 12022 implicitly requires *both* that the 'arming' take place during the underlying crime *and* that it have some 'facilitative nexus' to that offense. Evidence that a firearm is kept in close proximity to illegal drugs satisfies this 'facilitative nexus' requirement: a firearm's presence near a drug cache

16.

gives rise to the inference that the person in possession of the drugs kept the weapon close at hand for 'ready access' to aid in the drug offense." (*Bland*, *supra*, 10 Cal.4th at p. 1002, original italics omitted, italics added; see also *In re Tameka C.* (2000) 22 Cal.4th 190, 197-198 ["in the commission of" a felony, as used in § 12022.5, means during and in furtherance of the felony].)

As *Bland* makes clear, for a defendant to be "armed" for purposes of section 12022's additional penalties, he or she must have a firearm "available for use *to further the commission of the underlying felony*." (*Bland*, *supra*, 10 Cal.4th at p. 999, italics added.) "[W]hen the underlying felony is a continuing offense, it is sufficient if the defendant has a gun available at any time during the felony *to aid in its commission*. [Citation.]" (*People v. Becker* (2000) 83 Cal.App.4th 294, 297, italics added.)

Having a gun available does not further or aid in the commission of the crime of possession of a firearm by a violent offender. Thus, a defendant convicted of violating section 12021.1 does not, regardless of the facts of the offense, risk imposition of additional punishment pursuant to section 12022, because there is no "facilitative nexus" between the arming and the possession. However, unlike section 12022, which requires that a defendant be armed "*in* the commission of" a felony for additional punishment to be imposed (italics added), the Act disqualifies an inmate from eligibility for lesser punishment if he or she was armed with a firearm "[*d*]*uring* the commission of" the current offense (italics added). "During" is variously defined as "throughout the continuance or course of" or "at some point in the course of." (Webster's 3d New Internat. Dict. (1986) p. 703.) In other words, it requires a temporal nexus between the arming and the underlying felony, not a facilitative one. The two are not the same. (*Bland*, *supra*, 10 Cal.4th at p. 1002 ["'in the commission' of" requires both that "'arming'" occur during underlying crime *and* that it have facilitative nexus to offense].)

*In re Pritchett* (1994) 26 Cal.App.4th 1754 illustrates the difference. Pritchett struck his former girlfriend on the head with the barrel of a sawed-off shotgun. He was convicted of possessing the gun under former section 12020, subdivision (a), and his

sentence was enhanced, pursuant to section 12022.5, subdivision (a), for use of the firearm in commission of that offense. (*Pritchett*, *supra*, at pp. 1755-1756.) On appeal, the People argued the enhancement was valid, because Pritchett used the shotgun to strike the victim in the commission of possessing the gun. (*Id*. at p. 1757.) The Court of Appeal disagreed, explaining: "Although Pritchett used the shotgun as a club *during* his possession of it, he did not use it 'in the commission' of his crime of possession. Possession was complete without use of the shotgun. In addition to possessing it, he did use it, but using it as a club in no way furthered the crime of possession." (*Ibid*., fn. omitted.)

Following this reasoning, a defendant may be armed with a firearm *during* his or her possession of the gun, but not "in the commission" of his or her crime of possession. There is no facilitative nexus; having the firearm available for use does not further the illegal possession of it. There is, however, a temporal nexus. Since the Act uses the phrase "[d]uring the commission of the current offense," and not "in the commission of the current offense" (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii)), and since at issue is not the imposition of additional punishment but rather eligibility for reduced punishment, we conclude the literal language of the Act disqualifies an inmate from resentencing if he or she was armed with a firearm during the unlawful possession of that firearm. Taking the literal language and electorate's intent into consideration, no tethering offense, enhancement, or facilitative nexus is required when the eligibility determination is at issue.

## III. The prosecution's failure to plead and prove "arming" as a disqualifying factor does not entitle defendant to resentencing.

Defendant contends the statutory language contains pleading and proof requirements that were not met in his case. As amended by the Act, the three strikes law provides in pertinent part that "[i]f a defendant has two or more prior serious and/or violent felony convictions as defined in subdivision (c) of Section 667.5 or

18.

subdivision (c) of Section 1192.7 that have been pled and proved, and the current offense is not [a serious or violent felony as defined in the three strikes law, the defendant shall be sentenced as a second strike offender] *unless the prosecution pleads and proves* any of the following: [¶] … [¶] (iii) During the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C), italics added, 1170.12, subd. (c)(2)(C), italics added.) Thus, when an initial sentencing for a current offense is at issue, there is a clear statutory pleading and proof requirement with respect to factors that disqualify a defendant with two or more prior strike convictions from being sentenced as a second strike offender. (*People v. Yearwood, supra,* 213 Cal.App.4th at p. 170; see *People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1303, fn. 26 (*Kaulick*).)

Fairly read, however, section 1170.126 does not impose the same requirements in connection with the determination whether an inmate already sentenced as a third strike offender is eligible for resentencing as a second strike offender. (See *Kaulick*, *supra*, 215 Cal.App.4th at pp. 1298-1299, fn. 21.) Subdivision (e) of the statute provides: "An inmate is eligible for resentencing if: [¶] … [¶] (2) The inmate's current sentence was not imposed for any of the offenses *appearing in clauses* (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12." (Italics added.) This language refers specifically and expressly to the disqualifying factors, and does not incorporate the pleading and proof requirements contained in other portions of sections 667, subdivision (e)(2)(C) and 1170.12, subdivision (c)(2)(C).

Defendant claims, however, that an inmate seeking resentencing pursuant to section 1170.126 has a Sixth Amendment right to a jury determination, beyond a reasonable doubt, on the question of conduct constituting a disqualifying factor. Subdivision (f) of section 1170.126 expressly provides that, "[u]pon receiving a petition

19.

for recall of sentence under this section, *the court shall determine* whether the petitioner satisfies the criteria in subdivision (e)." (Italics added.)

Of course, constitutional requirements supersede statutory language. Considered in conjunction with each other, the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution require that each element of a crime or sentence enhancement be proved to the jury beyond a reasonable doubt. (*United States v. Gaudin* (1995) 515 U.S. 506, 509-510; *In re Winship* (1970) 397 U.S. 358, 364; *People v. Jones* (1999) 75 Cal.App.4th 616, 631.) In addition, the United States Supreme Court has made clear that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 (*Apprendi*).)[6] This is so whether the fact increases the statutory maximum penalty or a mandatory minimum penalty. (*Alleyne v. United States* (2013) 570 U.S. ___, ___ [133 S.Ct. 2151, 2160].) "Juries must find any facts that increase either the statutory maximum or minimum because the Sixth Amendment applies where a finding of fact both alters the legally prescribed range *and* does so in a way that aggravates the penalty." (*Id*. at p. 2161, fn. 2.) "When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury." (*Id*. at p. 2162.)

---

[6]     "[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. [Citations.] In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." (*Blakely v. Washington* (2004) 542 U.S. 296, 303-304, italics omitted.)

*Apprendi* and its progeny do not apply to a determination of eligibility for resentencing under the Act. As the Court of Appeal explained in *Kaulick*, *supra*, 215 Cal.App.4th 1279:

> "The maximum sentence to which Kaulick, and those similarly situated to him, is subject was, and shall always be, the indeterminate life term to which he was originally sentenced. While Proposition 36 presents him with an opportunity to be resentenced to a lesser term, unless certain facts are established, he is nonetheless still subject to the third strike sentence based on the facts established at the time he was originally sentenced.…

> "Moreover, the United States Supreme Court has already concluded that its opinions regarding a defendant's Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt do not apply to limits on downward sentence modifications due to intervening laws. (*Dillon v. United States* (2010) 560 U.S. 817, [828] (*Dillon*).) At issue in *Dillon* was a modification to the sentencing guideline range for the offense of which the defendant was convicted. The law provided that a prisoner's sentence could be modified downward when the range had been lowered; however, the law provided that a sentence could only be lowered if consistent with applicable policy statements.… The Supreme Court had already held that, in order to avoid constitutional problems, the federal sentencing guidelines were advisory, rather than mandatory. The issue in *Dillon* was whether the policy statement, which did not permit reducing a sentence below the amended range except to the extent the original term was below the original range, must also be rendered advisory. (*Id*. at p. [819].) The Supreme Court concluded that it remained mandatory. This was so because the statute allowing resentencing when the sentencing range was lowered was, itself, not a plenary resentencing in the usual sense. Instead, the statute simply authorized a limited adjustment to an otherwise final sentence. (*Id*. at p. [826].) The court stated, 'Notably, the sentence-modification proceedings authorized by [the statute] are not constitutionally compelled. We are aware of no constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent Guidelines amendments. Rather [the statute] represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines. [¶] Viewed that way, proceedings under [this statute] do not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt. Taking the original sentence as given, any facts found by

21.

a judge at a [modification downward] proceeding do not serve to increase the prescribed range of punishment; instead, they affect only the judge's exercise of discretion within that range.' (*Id*. at p. [828].) Such decisions, stated the court, simply do not implicate Sixth Amendment rights. ([*Id*. at pp. 828-829.])

"The language in *Dillon* is equally applicable here. The retrospective part of the Act is not constitutionally required, but an act of lenity on the part of the electorate. It does not provide for wholesale resentencing of eligible petitioners. Instead, it provides for a proceeding where the original sentence may be modified downward. Any facts found at such a proceeding … do not implicate Sixth Amendment issues." (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1303-1305.)

We recognize that *Kaulick* was concerned with a trial court's discretionary determination whether an inmate who is eligible for resentencing nevertheless should not be resentenced due to his or her dangerousness. Its reasoning applies with equal force to the initial eligibility determination, however. A finding an inmate is not eligible for resentencing under section 1170.126 does not increase or aggravate that individual's sentence; rather, it leaves him or her subject to the sentence originally imposed. In the case of a third strike offender such as defendant, that sentence is the indeterminate term of 25 years to life in prison that the trial court permissibly imposed, at the time defendant was convicted of his current offense, "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. [Citations.]" (*Blakely v. Washington, supra,* 542 U.S. at p. 303, italics omitted.) A trial court's determination in the section 1170.126 proceeding that a defendant was armed with a firearm during the commission of his or her current offense does not increase the penalty to which the defendant is already subject, but instead disqualifies the defendant from an act of lenity on the part of the electorate to which the defendant is not constitutionally entitled.**7**

---

**7** Defendant's attempt to distinguish *Dillon* on the authority of *Pepper v. United States* (2011) 562 U.S. ___ [131 S.Ct. 1229] fails. *Pepper* involved a plenary resentencing after the defendant's sentence had been set aside on appeal. (*Id*. at p. 1236.)

Defendant contends that whether he was armed during commission of his current offense constitutes criminal conduct, and, while the trial court determines aggravating and mitigating circumstances for sentencing purposes, it is the jury's function to determine the wrongful conduct for which punishment is to be imposed. Thus, he says, whether he was armed with a firearm had to be found true by a jury beyond a reasonable doubt.

If we were concerned with the propriety of the imposition of *additional or aggravated* punishment based on the nature of defendant's current conviction, defendant's argument would have merit. (See, e.g., *People v. Wilson* (2013) 219 Cal.App.4th 500, 503-504, 515-516 [trial court improperly sentenced defendant under three strikes law; court could not have found prior offense constituted strike without resolving factual dispute, and court may not impose sentence above statutory maximum based on disputed facts about prior conduct not admitted by defendant or implied by elements of offense]; *People v. Bautista* (2005) 125 Cal.App.4th 646, 654-655 [defendant was entitled, under federal constitutional law, to jury determination whether current offense included personal use of firearm so as to make it a serious felony for purposes of imposition of § 667, subd. (a) enhancement]; *People v. Taylor* (2004) 118 Cal.App.4th 11, 22-23, 26-27 [for purposes of imposition of enhancement under § 667, subd. (a), felony that does not qualify as serious felony as matter of law under § 1192.7, subd. (c) may be found to constitute serious felony if prosecution pleads and proves fact necessary to establish statutorily defined conduct; whether *prior* conviction qualifies as serious felony is question of law for court to determine based on record of conviction, but whether *current* offense is serious felony is question of fact for jury to decide based on evidence presented at trial]; see also *People v. Lo Cicero* (1969) 71 Cal.2d 1186, 1192-1193 [because complete denial of opportunity for probation constitutes equivalent of increase in penalty, prior convictions rendering defendant ineligible for probation with respect to current offense must be pled and proved].)

In the present case, however, we are not concerned with the initial imposition of sentence. As we have explained, defendant has already had an indeterminate term of 25 years to life imposed. Although the Act refers to defendant's "current" offense (e.g., §§ 667, subd. (e)(2)(C)(i)-(iii), 1170.12, subd. (c)(2)(C)(i)-(iii)), the offense is "current" not because, as in the preceding cases, defendant is pending sentencing on it, but because it is his most recent conviction and the offense for which he is presently serving a sentence. Cases limiting consideration to the elements of the offense and facts proven to the trier of fact beyond a reasonable doubt do not constrain a court where, as here, the issue is eligibility for a lesser sentence than the one already properly imposed. Like facts invoked to limit the ability to earn conduct credits, facts invoked to render an inmate ineligible for downward resentencing do not increase the penalty for a crime beyond the statutory maximum or alter the legally prescribed punishment so as to aggravate it, and so need not be pled or proved. (See *People v. Lara* (2012) 54 Cal.4th 896, 901, 905-906.)[8]

## DISPOSITION

The judgment is affirmed.

---

[8] Defendant suggests such an interpretation would permit a trial court to find arming, so as to disqualify an inmate from resentencing under the Act, even if an arming enhancement was pled but found not true by a jury, thereby running afoul of constitutional proscriptions against double jeopardy. As such a situation does not exist in the present case, we decline to issue what would amount to an advisory opinion thereon.