[No. F021993. Fifth Dist. Jan. 4, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
BRONICO D. JEFFERS, Defendant and Appellant.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

COUNSEL

Linda J. Zachritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Edgar A. Kerry and Lloyd G. Carter, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

STONE (W. A.), Acting P. J.—A jury convicted defendant, Bronico D. Jeffers, of violating Penal Code[1] section 12021 which makes possession of a firearm by a felon a crime.[2] At sentencing, defendant admitted his current offense was a violation of his probation for a previous conviction. He was granted 3 years probation for the current offense to run consecutively to the term of probation for the prior conviction[3] and was ordered to serve 150 days in local custody with 14 days credit. The court imposed a $1,000 restitution fine and directed defendant to pay $330 for the cost of preparing the presentence investigation report.

On appeal, defendant claims the trial court committed instructional error and exceeded its authority in requiring payment of the $1,000 restitution fine within 24 months of his release from custody.

FACTS

On June 7, 1993, defendant entered Chuck's Gun Works in Porterville and asked to talk to Richard Maness. Charles Bodoh, a gunsmith and owner of the gun shop, told defendant Richard was busy but he could help defendant. Defendant handed Bodoh a box wrapped in a paper bag and said he was making a delivery for a friend. Bodoh unwrapped and opened the box in which he found a .380-caliber handgun. Bodoh was looking at the pistol to determine whether it was loaded when he noticed defendant was walking out the door. Bodoh called to defendant to return because he required more information to enter the gun into the log. Defendant provided his name, address and telephone number before leaving the gun shop.

---

[1] All further statutory references are to the Penal Code.
[2] He was charged but found not guilty of obliterating the identification of a firearm in violation of section 12090.
[3] Probation was reinstated for the prior conviction.

Bodoh gave Maness the gun to log in while Bodoh took a telephone call. Maness noticed the serial numbers on the gun had been ground off. Bodoh contacted the Bureau of Alcohol, Tobacco and Firearms to report tampering with the serial numbers. Richard Beaudreaux, a detective with the Tulare County Sheriff's Department, later confiscated the gun and contacted defendant.

Defendant told Detective Beaudreaux that he had taken the gun to the gun shop for a friend. He said a pin was missing from the trigger. His friend's name was Kent Johnson, but defendant could not tell Detective Beaudreaux how to find Johnson. He later told Detective Beaudreaux that Johnson's full name was Richard Kent Johnson. Defendant described Johnson to Beaudreaux as White, slender, six feet two inches tall and in his early twenties. Defendant said Johnson had been a roommate of another friend, Kent Rowell.

Detective Beaudreaux spoke with Rowell who corroborated defendant's story, but said the friend's name was Richard Johnson and they had never been roommates. Johnson was visiting Rowell's apartment when Rowell overheard him ask defendant to deliver something.

Detective Beaudreaux was unable to locate Richard Kent Johnson in the Porterville area and a check of Department of Motor Vehicle records revealed no such person.

## DISCUSSION

### I. *Instructional Error*

Defendant does not challenge the sufficiency of the evidence to support the verdict. He claims evidence also supports the defense theory that defendant did not know what was in the package until he arrived at the gun shop and that he immediately got rid of the gun. According to defendant, had the jury been instructed properly, it is reasonably probable they could have found him not guilty of violating section 12021, subdivision (a). (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

■ Defendant alleges two instances of instructional error. First, the court failed to instruct regarding the required criminal intent. (CALJIC No. 3.30.) Second, the court refused defendant's pinpoint instruction which provides: "When an ex-felon comes into possession of a firearm, without knowing that he has a firearm, and he later learns that he has a firearm, he does not automatically violate Penal Code section 12021(a) upon acquiring

knowledge. [¶] The ex-felon violates the law only if he continues to possess the firearm for an unreasonable time, without taking steps to rid himself of the firearm."

Defendant contends there is an evidentiary basis for the instruction. We agree there is evidence to support the defense theory and the trial court committed reversible instructional error.

We begin with a summary of the testimony which supports the defense theory.

Kent Rowell testified defendant delivered a pizza to Rowell's apartment on the day in question. Rowell had several visitors that day, including Richard Johnson. Rowell overheard Johnson ask defendant if he would do Johnson a favor and drop a package off for him. He heard no mention of a gun. He saw defendant leave with a shoe-box-sized parcel.

Richard Maness testified he received a telephone call at the gun shop from a man who asked if he could send in a gun to have either the barrel or the firing pin repaired. The call was before defendant brought in the gun. The voice did not sound like defendant's. Maness saw defendant enter the shop with a box wrapped in a paper bag. He overheard defendant tell the shop owner, Charles Bodoh, that he was delivering the package for someone. Defendant did not say what was in the package, nor did he say it needed repair. He merely brought it to the counter, said it was a delivery and started to leave when Bodoh asked him to come back to give more information.

Bodoh testified defendant entered the shop and asked for "Richard." When Bodoh said Richard was busy, defendant said, "I deliver pizza. I'm delivering this to the shop for somebody." He then turned to leave. Defendant said nothing about a gun being in the package. Bodoh unwrapped and checked to see if the gun was loaded. He testified he may also have observed a broken firing pin and said something to defendant about the problem with the gun. Bodah called to defendant as he was leaving and said he needed to give defendant a receipt and to log in the gun. At Bodoh's request, defendant gave his name, address and telephone number before leaving.

Detective Boudreaux testified that when he spoke with defendant the following day defendant stated he received the gun from Richard Kent Johnson in a bag; he did not look in the bag and did not know what was in the bag until he arrived at the gun shop.

The following day Bodoh received a telephone call regarding the gun. The caller sounded like an older White man. Bodoh was certain it was not

defendant's voice. The man was very upset that the gun had been confiscated. Bodoh asked the man if he was aware it was illegal to possess a gun without a serial number. The man said he did not know it was illegal; he bought the gun "sometime ago" to carry on his job as a truck driver. He told Bodoh he gave the gun to defendant to bring to the shop to be repaired. The caller gave his name, but Bodoh could only recall it was a very short, single syllable name like Joe, Kent, or Sam.

We turn now to the applicable legal principles.

■ The elements of the offense proscribed by section 12021 are conviction of a felony and ownership, possession, custody or control of a firearm. (*People* v. *Bray* (1975) 52 Cal.App.3d 494, 497 [124 Cal.Rptr. 913]; *People* v. *Neese* (1969) 272 Cal.App.2d 235, 245 [77 Cal.Rptr. 314]; *People* v. *Nieto* (1966) 247 Cal.App.2d 364, 368 [55 Cal.Rptr. 546].) Knowledge is also an element of the offense. (*People* v. *Snyder* (1982) 32 Cal.3d 590, 592 [186 Cal.Rptr. 485, 652 P.2d 42].)

As with any crime or public offense, in order to prove a violation of section 12021, subdivision (a), the prosecution must prove, beyond a reasonable doubt, a union, or joint operation of act and intent. (§ 20.) No specific criminal intent is required for this crime; general intent to commit the proscribed act is sufficient to sustain a conviction. (*People* v. *Neese, supra*, 272 Cal.App.2d at p. 245; *People* v. *McCullough* (1963) 222 Cal.App.2d 712, 718 [35 Cal.Rptr. 591].) The act proscribed by section 12022, subdivision (a) is possession of a firearm. Therefore, whether possession is actual or constructive, it must be intentional.

Wrongful intent must be shown with regard to the possession and custody elements of the crime of being a felon in possession of a firearm. (*People* v. *Snyder, supra*, 32 Cal.3d at p. 598.) A person who commits a prohibited act "through misfortune or by accident, when it appears that there was no evil design, intention or culpable negligence" has not committed a crime. (§ 26.) Thus, a felon who acquires possession of a firearm through misfortune or accident, but who has no intent to exercise control or to have custody, commits the prohibited act without the required wrongful intent.

■ Respondent argues the general intent requirement is satisfied by proof of knowledge. We agree knowledge plus physical possession may ordinarily demonstrate an intent to exercise dominion and control, but knowledge does not conclusively demonstrate such intent as a matter of law. Otherwise, a felon would be strictly liable for the crime immediately upon finding a firearm, even if found under innocent circumstances.

Although the clerk's transcript reflects the court agreed, upon the prosecution's request, to instruct the jury regarding general intent, for some undisclosed reason the court failed to do so. The offered instruction read: "In the crime[s] charged in the information there must exist a union or joint operation of act or conduct and general criminal intent. To constitute general criminal intent it is not necessary that there should exist an intent to violate the law. *When a person intentionally does that which the law declares to be a crime, [he] is acting with general criminal intent, even though [he] [she] [sic] may not know [his] act or conduct is unlawful.*" (Italics added.)

The failure to read the instruction was not harmless. Defendant's theory was that the prosecution failed to prove a joint union of possession and intent, i.e., a knowing, intentional exercise of control over the gun. The general intent instruction was critical to the jury's understanding of the defense.

The problem was compounded by the trial court's response to a question from the jury during deliberations:

"We need to know the legal interpretation of possession as was explained to us by Judge Conn.

"Legal types of possession

"1. Constructive

"2. ???"

The court responded:

"Let me re-read the part of the instruction that talks about possession. It reads there are two kinds of possession, actual possession and constructive possession. Actual possession requires that a person exercise direct physical control over a thing. Constructive possession does not require actual possession, but does require that a person knowingly exercise control or the right to control a thing either directly or through another person or persons. One person may have possession alone or two or more persons together may share actual or constructive possession.

"Basically, ladies and gentlemen, this is a case where we're talking about actual possession. There's no dispute about that. And there is an understanding in the arguments of counsel that *there's no real dispute that the defendant possessed that object. The dispute is whether at the time the defendant*

*possessed the object, that he had actual knowledge of that object, a pistol. That's what the dispute is about.*" (Italics added.)

Whether defendant had actual knowledge of the gun was not the only issue. The issue of whether defendant intentionally exercised control over the gun was very much in dispute under defendant's theory of the case. His knowledge was merely a part of the equation. Without the general intent instruction and in light of the court's response to the inquiry, the jury reasonably could have believed the only issue to be decided was whether defendant had knowledge a gun was in the package even if that knowledge was not acquired until he arrived at the gun shop and even if possession was not intentional.

This brings us to defendant's claim that the court should have instructed the jury with the following special instruction: "When an ex-felon comes into possession of a firearm, without knowing that he has a firearm, and he later learns that he has a firearm, he does not automatically violate Penal Code section 12021(a) upon acquiring knowledge. [¶] The ex-felon violates the law only if he continues to possess the firearm for an unreasonable time, without taking steps to rid himself of the firearm."

We agree with respondent that the final sentence appears to introduce the elements of time and reasonableness of possession which are not legally required to establish a violation of section 12022, subdivision (a).[4] However, the instruction appears to be an attempt to focus upon the defendant's conduct and what that conduct suggests with regard to his intent to exercise dominion and control over the gun. If the jury believed he did not know or have reason to suspect he was delivering a gun until he arrived at the gun shop, evidence he took immediate steps to relinquish possession supports his claim that he did not intend to exercise control over the weapon, i.e., his temporary possession was unintentional.

■ A defendant, upon proper request therefor, has a right to an instruction to direct the jury's attention to evidence from which a reasonable doubt

---

[4]None of the four cases defendant cited to the trial court in support of his special instruction are on point. *People* v. *Scaggs* (1957) 153 Cal.App.2d 339, 352 [314 P.2d 793] and *People* v. *Scott* (1951) 108 Cal.App.2d 231 [238 P.2d 659] are cases involving charges the defendant received stolen property and the issue of whether the record supported the conclusion that possession was with knowledge of the nature of the stolen property. *People* v. *Ard* (1938) 25 Cal.App.2d 630, 631 [78 P.2d 254] and *People* v. *Wallace* (1952) 109 Cal.App.2d 676, 679 [241 P.2d 264] are cases in which the defendants were charged with illegal possession of narcotics and the issue was whether there was some legal excuse or authority for otherwise illegal possession. Although evidence regarding the length of time of possession had some bearing on the issues presented, none of the cases suggest that possession must be for an unreasonable time in order to be illegal.

of his guilt could be inferred. (*People* v. *Sears* (1970) 2 Cal.3d 180, 190 [84 Cal.Rptr. 711, 465 P.2d 847].) Disbelief is no justification for refusing a requested instruction if there is evidence to support defendant's theory. (*People* v. *Sullivan* (1989) 215 Cal.App.3d 1446, 1452 [264 Cal.Rptr. 284].) Although the instruction may be flawed in some respects, it was a reasonable attempt to articulate a valid legal principle supported by the evidence. ■ Had the jury been instructed properly regarding general intent, we would have confidence this legal principle was considered by the jury in reaching its verdict. However, the failure to so instruct compels reversal.

II. *Restitution Fine**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is reversed.

Vartabedian, J., and Harris, J., concurred.

---

*See footnote, *ante*, page 917.