Filed 8/20/14  P. v. Conley CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RICHARD PATRICK CONLEY,<br><br>Defendant and Appellant. | C073196<br><br>(Super. Ct. No. 10F06483) |

Defendant Richard Patrick Conley pleaded no contest to violating Health and Safety Code section 11359 (possession of marijuana for sale; count two).[1]  After a court trial, defendant was convicted of being a felon in possession of a firearm (Pen. Code, §

---

[1]    A charge of cultivating marijuana (Health & Saf. Code, § 11358; count one) was dismissed by the People under the plea agreement.

1

29800, subd. (a)(1); count three),[2, 3] and the court found that defendant was armed in the commission of the offense charged in count two (§ 12022, subd. (a)(1)).

Defendant contends insufficient evidence supports the verdict on count three and the arming enhancement. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The factual basis for defendant's plea as to count two, as stated by the prosecutor without objection, was that on September 28, 2010, defendant possessed 18 live marijuana plants, in excess of 44 pounds of processed marijuana, a scale, "drawing screens," and "some currency," and a sheriff's detective would testify as an expert that the marijuana described was possessed for sale.

The evidence at trial showed that law enforcement officers, including Senior Deputy Probation Officer Marc Marquez and Detective Darryl Meadows, conducted a probation search of defendant's brother, Royce Conley, on September 28, 2010, at a residence on Carden Way in Sacramento County.[4] The officers entered by force after the persons inside failed to respond to knock-notice.

---

[2]     Undesignated section references are to the Penal Code.

[3]     The information alleged that defendant was convicted in 1998 of violating the Health and Safety Code provision charged in this case. Defendant never disputed that allegation at trial. In his opening brief, he concedes that he is a convicted felon for purposes of section 29800.

[4]     Royce Conley was originally also charged with counts one through three; defendant's and Royce's mother, Sheryl Conley, was originally charged with counts one and two, plus unlawfully opening and maintaining a place to sell marijuana (Health & Saf. Code, § 11366; count four), and with the same enhancements as to counts one and two. The trial court granted the People's pretrial motion to dismiss all charges against Royce and Sheryl in the interests of justice.

In the interest of clarity, we refer to Royce Conley as "Royce," and to defendant's and Royce's father, Richard Conley, Sr., as "Conley."

The officers saw defendant and others coming downstairs from a loft. There were five to eight people aside from defendant in the home. The officers handcuffed the people coming down the stairs and detained them in the living room.

The officers did a protective sweep of the entire house. The loft was the only upstairs room readily accessible from the stairs.

Outside the home, Detective Meadows, a veteran narcotics investigator, saw marijuana plants growing in the backyard and side yard. He also saw an early warning system in the backyard, consisting of soda bottles tied to a string so that anyone walking there would knock over the bottles and alert the occupants.

During the investigation, the loft was thoroughly searched. Detective Meadows saw a marijuana trim-dry operation there, including trimming stations and marijuana hanging from strings across the room. There was no sign the loft was being used for any other purpose.

The loft had a storage area, with its opening covered by a tarpaulin; the storage area and the trimming area were about 10 feet apart. Only the tarpaulin separated the two areas. Looking behind the tarpaulin into the storage area, Detective Meadows saw an unlocked ice chest with boxes next to it.

Another officer told Detective Meadows that a nine-millimeter handgun was inside the ice chest. There was no round in the chamber, but a loaded clip was outside the gun. The gun appeared to be operable. No other guns were found in the residence, so far as Detective Meadows knew. In his opinion as a narcotics detective, the gun was in the loft to protect the loft's contents -- marijuana.

While defendant was seated, handcuffed, in the living room, Probation Officer Marquez learned that a handgun had been found in the residence. He and another officer to whom he was speaking discussed this information quietly to conceal it from the detained suspects.

3

Probation Officer Marquez spoke to Royce, then separated defendant from the group and interviewed him after Mirandizing[5] him and obtaining his agreement to speak. Defendant said he lived at the residence with his parents. He admitted smoking half an ounce of marijuana per day, but claimed all the marijuana in the residence was for use by a medical marijuana collective. Defendant said his father (Conley) had blocked off the loft so that they could use it for the collective.

Probation Officer Marquez mentioned that a handgun had been found and asked defendant if he knew anything about the gun found upstairs. Defendant said he did not know who "that gun" belonged to, but it "might be" his father's. Defendant also said that at some unspecified time he saw "the clip" on the floor and picked it up; he did not say where it was when he saw it. Probation Officer Marquez had been told that the gun had a clip, but did not mention the clip to defendant before defendant made that statement. Defendant did not give any indication that his statements concerned any gun other than the one found in the loft.

The gun proved to be unregistered. The only fingerprint found on it was not defendant's.

Testifying for the defense, Royce's girlfriend, Jessica Cruz, stated that the last time she went up into the loft, two or three weeks before September 28, 2010, she did not see any marijuana there; in fact, she had never seen any. She also stated that every time she had been in the loft, the storage area appeared to be completely blocked off by a tarpaulin taped and stapled in place.

Defendant's father (Conley) testified that he, his wife, and their grandchildren lived at the Carden Way residence; defendant did not. Sometimes defendant would visit his children there and sleep in their room.

---

[5]     *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].

4

Conley testified that he used the storage area in the loft for his personal possessions; nothing there belonged to defendant. Conley blocked off the storage area with Visqueen,[6] stapled and taped to the wall, because he wanted to keep people out. Before September 28, 2010, the area was piled full of boxes and other items, with no pathway to walk through, and the Visqueen barrier was never removed. After the officers searched the residence, there was a pathway in the storage area and the barrier was gone. On advice of defense counsel Conley did not replace the barrier, so the photographs in evidence (taken within the week before trial) did not show conditions prior to the search.[7]

Conley knew that defendant and others were using the loft area for marijuana drying in September 2010. He went up and looked around to see what was going on. He helped to "tarp up" the stairwell entrance at that time.

According to Conley, he acquired a nine-millimeter handgun from his father while living in Southern California. When he moved to Northern California, he transported the gun in a box. Before his latest move, he put the gun in a red cooler, which he placed in the storage area at the Carden Way residence. He never went into the cooler to retrieve the gun, and did not check to see if it was still there when he put up the barrier to the storage area.

The gun's clip had bullets in it when Conley transported it to the Carden Way residence, but the gun and the clip were separated; both were in the cooler, but "not together." There was never an occasion for the clip to be out on the floor.

---

[6] Visqueen is "a black, thick, rubbery plastic."

[7] On cross-examination, Conley admitted that before September 28, 2011, other areas in the house had also been "tarped off," including at least two windows. He put some of those tarpaulins up, but not all of them.

Conley never saw the gun at the residence and never saw defendant in possession of the gun. But neither the gun nor the cooler had a lock, and someone who knew the gun was there could easily access it.

Conley's grandson had an airsoft toy gun with a clip. Conley had seen the clip on the floor in the house.

After the parties argued the matter, the trial court ruled that the People had proved beyond a reasonable doubt defendant was a felon in possession of a firearm and was armed in the commission of the offense charged in count two. The court did not make any express factual findings.

## DISCUSSION

Defendant contends there was insufficient evidence to prove count three or the arming enhancement. We disagree.

When reviewing a challenge to the sufficiency of the evidence to support the judgment, we ask "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 574], original italics.) We "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578; see also *People v. Jones* (1990) 51 Cal.3d 294, 314.)

"This court must . . . presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] If the circumstances reasonably justify the trial court's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. [Citations.] . . . [¶] Before the judgment of the trial court can be set aside for insufficiency of the evidence . . . , it must clearly appear that upon no hypothesis whatever is there sufficient

6

substantial evidence to support it. [Citation.]" (*People v. Redmond* (1969) 71 Cal.2d 745, 755; see also *People v. Johnson, supra*, 26 Cal.3d at pp. 576-577.)

Although defendant cites the appropriate standard of review, his argument disregards it by omitting key evidence and construing what remains most favorably to his position. When we consider the evidence, including the reasonable inferences from the evidence, in the light most favorable to the judgment, as we must do, we conclude that substantial evidence supports the judgment.

"The elements of the offense [of felon in possession of a firearm] are [(1)] conviction of a felony[,] and [(2)] ownership, possession, custody or control of a firearm. [Citations.] Knowledge is also an element of the offense. [Citation.]" (*People v. Jeffers* (1996) 41 Cal.App.4th 917, 922 (*Jeffers*) [former § 12021]; accord, *People v. Kim* (2011) 193 Cal.App.4th 836, 846.)

"Possession may be physical or constructive, and more than one person may possess the same contraband. [Citation.] Possession may be imputed when the contraband is found in a place which is immediately accessible to the joint dominion and control of the accused and another. [Citations.]" (*People v. Miranda* (2011) 192 Cal.App.4th 398, 410 (*Miranda*).)

"As with any crime or public offense, in order to prove a violation of [felon in possession of a firearm], the prosecution must prove, beyond a reasonable doubt, a union, or joint operation of act and intent. (§ 20.) No specific criminal intent is required for this crime; general intent to commit the proscribed act is sufficient to sustain a conviction. [Citations.]" (*Jeffers, supra*, 41 Cal.App.4th at p. 922.)

Here, it was undisputed that defendant had been previously convicted of a felony. He admitted to Probation Officer Marquez that he lived at the Carden Way residence.[8]

---

[8] Defendant ignores this admission in his opening brief.

7

The evidence, construed most favorably to the judgment, showed that he had full access to the loft, in which he conducted his marijuana processing operation. The officers testified that simply by moving a tarpaulin one could easily enter the storage area of the loft, where the unlocked ice chest holding the gun and clip (where they had always been kept, according to Conley) was in plain view. Although Conley and Jessica Cruz testified that that area was inaccessibly sealed off, the trial court was not required to find their testimony on this point credible without corroboration from disinterested witnesses or objective evidence, and impliedly did not do so. Thus, the evidence was sufficient to establish defendant's dominion and control over the place where the gun was kept. (*Miranda, supra*, 192 Cal.App.4th at p. 410; *People v. Williams* (2009) 170 Cal.App.4th 587, 625.)

Furthermore, when Probation Officer Marquez asked defendant about the gun found upstairs, defendant did not claim he did not know the gun was there; he claimed only that he did not know who owned it, but that it "might be" his father's gun (as his father testified that it was). This amounted to an implied admission that he knew of its presence and its location in the place where his father testified that it was always kept. And since possession may be constructive and shared by more than one person, it was immaterial whether he owned the gun or whether he said someone else did. (*Miranda, supra*, 192 Cal.App.4th at p. 410.)

Finally, defendant admitted that he had found "the clip" on the floor and picked it up. Although the defense tried to suggest below and continues to suggest on appeal that the clip could have belonged to an airsoft toy gun, defendant produced no evidence to support that theory. Thus, the trial court could reasonably accept the officers' unrebutted testimony, which was consistent with Conley's testimony, that the clip was in the ice chest along with the gun and fit into the gun. Defendant's statement thus provided further evidence of his knowledge and constructive possession of the gun.

8

Defendant cites *Jeffers, supra*, 41 Cal.App.4th 917, for the proposition that "the act of touching a clip must demonstrate knowledge of the gun in the storage area and an intent to possess or exercise the right to control that specific gun."[9] Defendant is mistaken. His admission that he saw and touched the clip -- which, as the remaining evidence established, came from the gun in the ice chest -- was merely one of several pieces of evidence pointing by reasonable inference to the conclusion that he knew about the gun. It did not need to prove that point all by itself.

So far as defendant argues in reliance on *Jeffers, supra,* that there was insufficient evidence of his intent to possess the gun, his reliance is misplaced. In *Jeffers*, the defendant contested both knowledge and intent: he claimed he could not have intended to exercise control over a gun wrapped in a package he had picked up from another person, because he did not know the package contained a gun. (*Jeffers, supra*, 41 Cal.App.4th at p. 921.) Here, defendant contested only his knowledge of the gun's presence. He never argued that even if he knew of its presence there was insufficient evidence he intended to possess it or exercise control over it. And the trial court could reasonably infer, given the gun's proximity to defendant's marijuana processing operation, that if he knew the gun was in the loft, he intended to exercise control over it to assist him in that activity whenever the need might arise.

For all the above reasons, we find that sufficient evidence supported the judgment as to count three.

To prove the arming enhancement in this case (§12022, subd. (a)), the prosecution had to prove beyond a reasonable doubt that defendant "knew of the firearm's presence,

---

[9]    Defendant cites to page 921 of *Jeffers, supra*, for this proposition, but that page merely describes the prodefense evidence in the case and does not discuss any legal principles. We presume he meant to cite to page 922, which sets out the legal principles applicable to proving a violation of section 29800.

9

. . . that its presence [in close proximity to illegal drugs] was not accidental or coincidental, and . . . that, at some point during the period of illegal drug [activity], the defendant was present with both the drugs and the firearm and thus that the firearm was available for the defendant to put to immediate use to aid in the drug [activity]." (*People v. Bland* (1995) 10 Cal.4th 991, 1002-1003; accord, *People v. Pitto* (2008) 43 Cal.4th 228, 238.) On appeal, as stated above, we need find only that substantial evidence supported the judgment.

Given the evidence that defendant knew of the gun's presence, the remaining points follow by reasonable inference. When carrying out his marijuana processing operation, defendant was only a few feet from the place where the gun was stored. It is common knowledge that persons engaged in illegal drug activities on their premises frequently possess weapons there for protection. (See *People v. Ledesma* (2003) 106 Cal.App.4th 857, 865; *People v. Thurman* (1989) 209 Cal.App.3d 817, 822 [firearms one of the " 'tools of the trade' " of narcotics business].) The gun and the loaded clip which fit the gun were stored together in an unlocked ice chest; thus, they were readily available to put to immediate use, either offensively or defensively, to aid defendant in his drug activity. (*People v. Bland, supra,* 10 Cal.4th at p. 997.) Together, this evidence was sufficient to support the judgment as to the arming enhancement.

## DISPOSITION

The judgment is affirmed.

       NICHOLSON      , Acting P. J.

We concur:

       DUARTE      , J.

       HOCH      , J.