Filed 1/21/15  P. v. Macedo CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C075324 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F03640) |
| v. | |
| RANDY SCOTT MACEDO, | |
| Defendant and Appellant. | |

A jury found defendant Randy Scott Macedo guilty of possession of a destructive device, possession of ammunition by a felon, two counts of possession of a silencer, possession of an assault weapon, possession of methamphetamine, and two counts of felon in possession of a firearm.  The trial court sustained three prior conviction allegations and sentenced defendant to 10 years eight months in state prison.

On appeal, defendant contends there is insufficient evidence to support one of the felon in possession of a firearm counts and there is an error in the abstract regarding the award of presentence credits.  We shall order a correction to the abstract and affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

On June 7, 2012, Sacramento County Sheriff's Deputies conducted a welfare check at the home of defendant, his seven-year-old daughter, and defendant's grandfather, Jerry Reinhold. The welfare check was in response to threatening voice mails defendant left with his former girlfriend Rachel Claunch.

A search of defendant's bedroom found a bomb, boxes of 7.62 x 39 rifle ammunition, several live 7.62 x 39 cartridges out in the open, handcuffs, a box of assorted ammunition, a small amount of methamphetamine, and photographs of defendant possessing firearms. The bomb, which contained metal screws, tacks, and nails, was a deadly weapon which would detonate if flame was applied to the fuse.

A hidden compartment on the floor of the hallway closet contained a rifle magazine, a homemade silencer, a shotgun shell in a plastic bag, a device for loading Glock magazines, a Hells Angels Daly City patch, and a spring with instructions labeled "booby trap." A large metal canister containing ammunition was found in the living room. Several handguns belonging to Reinhold were in a locked safe in the den. Behind a false wall in the garage was a compartment containing assault rifle parts and a large quantity of rifle and handgun ammunition.

Inside Reinhold's bedroom, deputies found a locked bedroom closet containing weapons haphazardly piled underneath clothing. These included: a 12-guage shotgun, a .45-caliber Springfield Armory 1911 pistol, a Springfield M1A1 .308-caliber rifle, an XM-15 assault rifle, and the upper assembly for an assault rifle. The closet also contained several gun holsters, a magazine pouch, ammunition, a commercial silencer, a bag of rifle parts, and a bag containing a business card with the words "save for Randy Macedo." The magazine pouch and one of the holsters matched those found in a photograph found elsewhere in the house that depicted defendant holding a gun. A plastic bag containing pyrotechnic powder was also found in the closet.

A camouflage hunting suit known as a ghillie suit was in the backseat of defendant's pickup truck, which was parked on the property. Inside the house, deputies found a photograph of defendant in the ghillie suit holding a gun holster and a rifle similar to the .308-caliber Springfield found in Reinhold's closet.

Reinhold told deputies that the shotgun and M1A1 removed from the closet were his. He said that he was storing the .45-pistol for defendant's ex-girlfriend Pam Shales.

Reinhold was unavailable to testify at trial and his videotaped preliminary hearing testimony was played to the jury. Defendant lived with him at his residence on the day of the search. Defendant's girlfriend Rachel Claunch used to live there but moved out one month before the search. A few weeks before the search, defendant showed what he called a bomb to Reinhold.

Reinhold did not own the box of ammunition found in the living room. He was not aware of the secret compartment in the hallway closet or of the items found there. He also did not know there was ammunition behind a wall in the garage. Reinhold locked the doors to the den, his bedroom, and his bedroom closet, although they were all unlocked when law enforcement arrived. The locks were intended to keep defendant out of those areas. The safe in the den and the guns inside it belonged to Reinhold.

Of the items removed from the closet, Reinhold owned only the 12-guage shotgun. However, he had not put the shotgun in the closet and had seen defendant possessing it at some prior time. He had never seen the assembled assault rifle removed from his closet; he had only seen the parts for the weapon, which were bought by Pam Shales but possessed by defendant. He did not own the silencers and did not know how they got into his home. He never saw defendant possessing a silencer.

Claunch testified that she previously lived with defendant, moving out on May 5, 2012. She saw defendant in possession of both guns and ammunition when she lived there. Claunch saw him watch a video about making a silencer and saw him make a

3

silencer. She identified one of the silencers found in the home. The Hells Angels patch found in the search was defendant's.

Defendant built hidden compartments in the hallway closet and garage, where he kept his guns and ammunition. He also stored guns and ammunition in Reinhold's bedroom closet, gaining entrance by removing the doorknob. Claunch identified the gun held by defendant in the photograph as a weapon defendant handled. The assault rifle parts were ordered online by defendant. The .45-caliber Springfield Armory 1911 pistol was defendant's. She did not recognize the shotgun.

Pamela Shales lived with defendant for five years beginning in 1999. She bought guns for defendant when they were together. She bought a Sig Sauer for herself and a Springfield nine-millimeter handgun and a Bushmaster gun piece for defendant. Defendant paid for the guns and took the Springfield and the Bushmaster to Reinhold's home.

Defendant's fingerprints were found on the duct tape sealing the plastic bag with the pyrotechnic powder and on the homemade silencer. The parties stipulated that defendant had a prior felony conviction in August 1998 and the substance found in defendant's bedroom was 0.15 grams of methamphetamine, a usable amount.

Testifying on his own behalf, defendant said he lived with Reinhold since 1999. Shales bought the Bushmaster gun piece and the nine-millimeter Springfield for him and he took them to Reinhold's house. He had no other firearms, but had ammunition and magazines at Reinhold's house. They had been kept in Reinhold's gun safe in the garage but were moved to Reinhold's bedroom closet after the safe was sold. He had no access to Reinhold's bedroom or bedroom closet because the doors were locked. The Springfield rifle found in the closet belonged to Reinhold. Shales did buy the Springfield .45-caliber pistol for him. He and Shales asked Reinhold to secure the pistol.

Defendant admitted having the methamphetamine, the ammunition, and the bomb, which was an M-80 firecracker he found a week before his arrest. He was not the person

4

in the picture wearing the ghillie suit.  He built the hidden compartment in the hallway closet and the homemade silencer.  The other silencer was a fake bought before his felony convictions.  He also made the hidden compartment in the garage that was used to store ammunition and guns.

## DISCUSSION

## I

*Substantial Evidence Supports The Felon In Possession Of A Firearm Conviction*

Defendant contends there is insufficient evidence to support his conviction in count eight, felon in possession of a firearm.  We disagree.

Defendant was charged with felon in possession of a firearm in counts seven and eight.  With respect to those counts, the jury was instructed that the prosecution alleged that defendant possessed three firearms, the Springfield .45-caliber 1911 pistol, the 12-guage shotgun, and the Springfield M1A1 .308-caliber rifle.  The jury was given a unanimity instruction with respect to these counts.

Defendant asserts there is insufficient evidence that he possessed either the shotgun or the M1A1.  He bases this contention on Reinhold telling deputies that he owned both of these weapons.  He additionally notes that Reinhold locked his bedroom closet where these guns were found and claims the prosecution failed to produce any evidence that defendant had a duplicate key to the closet.  He also notes that Reinhold testified at the preliminary hearing that the shotgun was his and that he purchased it years ago.  Although Reinhold also testified that defendant possessed the shotgun at some previous unspecified time, defendant claims this cannot support a finding that defendant possessed the weapon after his felony conviction.

The elements of felon in possession of a firearm are:  (1) conviction of a felony, (2) ownership, possession, custody or control of a firearm, and (3) knowledge of the firearm's presence.  (*People v. Jeffers* (1996) 41 Cal.App.4th 917, 922.)  "To determine

5

whether the prosecution has introduced sufficient evidence to meet [the reasonable doubt] burden, courts apply the 'substantial evidence' test. Under this standard, the court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence--that is, evidence which is reasonable, credible, and of solid value--such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.] The focus of the substantial evidence test is on the whole record of evidence presented to the trier of fact, rather than on ' "isolated bits of evidence." ' " (*People v. Cuevas* (1995) 12 Cal.4th 252, 260-261, italics omitted.)

Defendant's claim overlooks the evidence that he had access to the closet and the weapons therein. Defendant's fingerprints were found on the bag of pyrotechnic powder found in Reinhold's closet, as was a card indicating something should be saved for him. There was also testimony that defendant would bypass the lock on Reinhold's closet by removing the doorknob. We also note that defendant does not contest his convictions based on other property found in Reinhold's closet, the commercial silencer that formed the basis of one conviction for possession of a silencer, or for the felon in possession count based on the .45-caliber pistol found in Reinhold's closet.

The basis of defendant's claim, Reinhold's statement to the police that he owned the shotgun and M1A1, is at least partially contradicted by his preliminary hearing testimony that the M1A1 was defendant's. Defendant attempts to address this problem by claiming that Reinhold's preliminary hearing testimony on this point is not credible because it does not square with Reinhold's statement to the deputies. This claim is unsuccessful as it runs contrary to well-established rules of appellate review.

"The testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence, inconsistent or false as to other portions." (*In re Frederick G.* (1979) 96 Cal.App.3d 353, 366.) In deciding whether substantial evidence supports the trial court's findings, we do not evaluate the credibility of witnesses; that is

6

within the provenance of the trier of fact. (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) "[U]nless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Reinhold's testimony is sufficient to support a finding that defendant possessed the M1A1 found in Reinhold's closet. Since there is evidence defendant had access to the closet, the jury could reasonably infer that defendant knew the firearm was in the closet. Substantial evidence therefore supports his conviction for felon in possession of a firearm in count eight.

## II

### *Error In The Abstract*

Defendant contends there is an error in the abstract regarding the award of presentence credits. The People agree.

The trial court awarded 534 days of credits for time served before sentencing and 534 days of conduct credits. The abstract shows an award of 534 days of actual credits and 267 days of conduct credits.

When an abstract conflicts with the court's oral pronouncement of judgment, it is the court's oral pronouncement that prevails. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-186.) We shall order a correction to the abstract.

## DISPOSITION

The judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment reflecting an award of 534 days of presentence credits for time served and 534 days of presentence conduct credits and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.


      ROBIE      , J.

7

We concur:



     NICHOLSON     , Acting P. J.



     MURRAY     , J.