Filed 2/10/15  P. v. Tracy CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C073349 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 05F1398 & 12F1419) |
| v. | |
| PHILLIP EDWARD TRACY, | |
| Defendant and Appellant. | |

Defendant Phillip Edward Tracy appeals his convictions for misdemeanor resisting a peace officer and possession of a firearm by a felon.  He contends there is insufficient evidence supporting his conviction for resisting or delaying a peace officer, as there is no evidence he willfully delayed the officers.  He contends his conviction for possession of a firearm must be reversed, as there is not sufficient evidence that the gun case was unlocked or that he knew it was unlocked.  We affirm.

1

BACKGROUND

Between November 2011 and January 2012, defendant made numerous visits to a variety of doctors and health clinics. He sought and received a number of prescriptions for oxycodone. In January 2012, Dr. Blosser of the Tehama Health Clinic conducted a search of the Department of Justice database and discovered that in the preceding six months, defendant had seen five different doctors for pain medications and received refills from four different pharmacies. Following a search, officers found text messages on defendant's phone that appeared to be about making arrangements for drug transactions. Neighbors observed many visitors to defendant's home at all times of the day and night. These visitors usually stayed a few minutes to 20 minutes. One neighbor, Michael Cheso, saw defendant sell prescription drugs like OxyContin to numerous people. Defendant had also suggested Cheso could raise money quickly by going to defendant's doctor, getting a prescription for OxyContin and then selling the pills. Cheso had a prior felony conviction, and he and defendant had a history of bad relations.

In February 2012, the Shasta County Interagency Narcotics Task Force, pursuant to a search warrant, searched defendant's home. During the course of the search, they found numerous pill bottles containing oxycodone, Suboxone, lorazepam, and hydrocodone. The prescription bottles were in defendant's name. In addition, there were a number of empty bottles in both defendant's name and his wife's, Megan. The police also found several large containers of marijuana in a utility room, the master bedroom, and in a safe.

During the search, officers also found a firearm in the northwest bedroom, the "pink" room. The gun was a .38 revolver in an unlocked gun case on a shelf in the upper portion of the closet. There was a trigger lock inside the case but it was not attached to the gun. Officers also found mail addressed to defendant in an envelope in a dresser in the pink bedroom, and IRS papers in the names of both defendant and his wife. In the

northeast portion of the house, in an area referred to as the utility room or "storage unit," officers found two boxes of unexpended .38 Special cartridges.

In July 2012, defendant, who was on probation at the time, failed to appear for a court hearing and the trial court issued a bench warrant. Officers went to defendant's home to conduct a probation search. The officers approached the front door, banged on the door loudly, announced their presence, and demanded entry. They did this at least four times but received no response. They could hear someone inside "running up and down what sound[ed] like the halls in the house." The officers forced off a screen security door and banged on the interior door another three or four times, announcing, "Police. Probation search. Demand Entry." They then forcibly entered. About three minutes passed from the time they first announced their presence to the time they entered the home. Once inside, the officers moved into the living room and announced, "Police. Probation search. Make yourself known." There was no response. Officers continued to move through the house and found defendant, his wife and their young son standing between the kitchen and a storage area.

In the master bedroom of the home, officers found more prescription pills, defendant's driver's license, and business cards for several doctors and pain management clinics. They also found defendant's cell phone and a plastic bag with $4,850 in cash on the floor behind a stereo and speakers. The floor around the items was dusty, but the cell phone and plastic bag were not.

Officer Eric Little of the Redding Police Department believed a number of the text messages on the phone referenced narcotic sales. He opined that defendant possessed the prescription drugs and the marijuana for sale, and that most drug dealers also have weapons or firearms on hand to protect their product and money from thieves.

Defendant denied he possessed the drugs for sale. He claimed all the drugs in his home were legitimately prescribed for either his or his wife's physical problems. He claimed the cash was proceeds from the sale of a car and the remainder was a personal

loan from a friend. He also stated the gun belonged to his wife, and was kept in a locked safe so he would not have access to it. Defendant also claimed he requested his wife keep a trigger lock attached to the gun and to keep the ammunition for the gun locked up with the gun. He acknowledged he knew his wife had a gun, but denied knowing where it was kept. Defendant also denied he tried to delay or obstruct the officers' entry into his home on the day of the second search. He testified he was in bed and unable to walk easily due to swelling in his legs. When he heard the law enforcement officers at the door, he was attempting to get to the door. He made it as far as the kitchen when officers entered the home.

A jury found defendant guilty of possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)),[1] possession of ammunition by a felon (§ 30305, subd. (a)(1)), possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)), obtaining and attempting to obtain oxycodone by fraud (Health & Saf. Code, § 11173, subd. (a)), and resisting, delaying or obstructing officers (§ 148, subd. (a)(1)). The jury found defendant not guilty of possession of a smoking device (Health & Saf. Code, § 11364.1). The jury could not reach a verdict on three counts of possession of a controlled substance for sale (Health & Saf. Code, §§ 11351), one count of possession of marijuana for sale (Health & Saf. Code, § 11359), two counts of maintaining a place for selling and using controlled substances (Health & Saf. Code, § 11366), one count of possession for sale and sale of a controlled substance (Health & Saf. Code, § 11375, subd. (b)(1)), failing to appear on a felony charge (§ 1320.5), and two counts of selling a controlled substance (Health & Saf. Code, § 11352, subd. (a)).

Defendant then entered pleas of no contest to two counts of possession of a controlled substance for sale and purchase for sale. He also admitted he had been

---

[1] Undesignated statutory references are to the Penal Code.

released on bail when he committed the possession for sale and purchase for sale. The trial court dismissed the remaining counts on which the jury was unable to reach a verdict. The trial court sentenced defendant to an aggregate term of 10 years eight months.

## DISCUSSION

The standard for judicial review of a criminal conviction challenged as lacking evidentiary support is well established: "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) We accord due deference to the verdict and will not substitute our conclusions for those of the trier of fact. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1078.) A conviction will not be reversed for insufficient evidence unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

## I

### *Willfully Delayed Officers*

Section 148, subdivision (a)(1) provides: "Every person who willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office" is guilty of a criminal offense. Defendant contends there was insufficient evidence to support his conviction on this charge, specifically because there was no evidence he willfully delayed the officers. He relies on *People v. Quiroga* (1993) 16 Cal.App.4th 961, for support. In that case, the defendant was inside an apartment when an officer entered without a warrant. The defendant demanded that the officer leave, and argued before complying with the officer's directives to sit down on a couch and remove his hands from his pockets. Once seated, the defendant again argued with

5

the officer before complying with the officer's order to put his hands on his lap, and again argued before complying with the officer's directive to stand up. (*Id*. at p. 964.) The appellate court recognized that the defendant had "complied slowly" with the officer's orders, but concluded that section 148 does not criminalize "a person's failure to respond with alacrity to police orders." (*Id*. at p. 966.)

This case is distinguishable from *Quiroga.* Here, defendant did not comply with officers' orders slowly. He did not comply at all. He did not respond with a lack of "alacrity." He did not respond at all. The officers repeatedly knocked on the door and announced their presence. There was no response from inside defendant's home, no one answered the door, and no one called out to the officers and acknowledged their presence. Officers heard someone running up and down the hall. They forced the security screen door off and again repeatedly knocked and announced their presence. There was still no response from inside the home. They battered the door down and entered the home. As they entered, they repeatedly announced their presence and told the occupants to make their presence known. There was no response. Officers found a cell phone and money that appeared to have been recently hidden. When they found defendant, he was between the kitchen and a storage area. It is reasonable to infer from his proximity to the storage area that defendant was attempting to hide before officers entered the home. It is also reasonable to infer from the placement of the cell phone and cash, their lack of dust despite the dust in the surrounding area, and hearing someone running up and down the hall, that defendant attempted to ensure the phone and cash were hidden from officers. It need not have been defendant himself who ran up and down the hall to support this inference. It is also reasonable to infer from defendant's lack of response to the officers' demands that he make his presence known, and his failure to even verbally respond to their knocks on the door, that he was not intending to answer their summons, but to buy himself time to hide paraphernalia and himself. In sum, it was reasonable for the jury to

6

infer from this evidence that defendant willfully delayed the officers.  Accordingly, there was sufficient evidence to support the conviction.

II

*Possession of a Firearm by Felon*

Defendant next contends there was not sufficient evidence to support his conviction for being a felon in possession of a firearm, as there was not sufficient evidence the gun case was unlocked or that he knew it was unlocked.

Section 29800, subdivision (a)(1) provides:  "Any person who has been convicted of a felony under the laws of the United States, the State of California, . . . and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony."  It is not necessary that the defendant personally carry or be in actual physical possession of the firearm, the offense may also be based on defendant's constructive possession.  (*People v. White* (2014) 223 Cal.App.4th 512, 524.)  " 'To establish constructive possession, the prosecution must prove a defendant knowingly exercised a right to control the prohibited item, either directly or through another person.' [Citation.]"  (*Ibid.*)

Defendant relies on section 26 and *People v. Jeffers* (1996) 41 Cal.App.4th 917 (*Jeffers*), for the proposition that "[a] person who commits a prohibited act 'through misfortune or by accident when it appears there was no evil design, intention or culpable negligence' has not committed a crime."  (*Id.* at p. 922.)  This case is unlike *Jeffers*.  In *Jeffers* the defendant was convicted of possession of a handgun by a felon.  He had delivered a box containing a handgun to a gunsmith and started to walk out the door.  The gunsmith required information to enter the gun into the log and the defendant provided his identity and left.  (*Id.* at p. 919.)  On appeal he alleged instructional error in (1) failing to instruct regarding the required criminal intent (CALJIC No. 3.30) and (2) refusing a defense instruction that:  " 'When an ex-felon comes into possession of a firearm, without knowing that he has a firearm, and he later learns that he has a firearm, he does not

7

automatically violate Penal Code section 12021[, subdivision] (a) upon acquiring knowledge. [¶] The ex-felon violates the law only if he continues to possess the firearm for an unreasonable time, without taking steps to rid himself of the firearm.' " (*Jeffers*, *supra,* at pp. 920-921.)

Here, there is no evidence that defendant constructively possessed the gun through accident or misfortune. Defendant knew his wife kept a gun in the house. The gun was found in an unlocked gun case on a shelf in a bedroom in defendant's home. The trigger lock was not on the gun. Defendant had access to the room and there were papers in the room with his name on them. Ammunition that could be used with the gun was found in other parts of the home, also unlocked and readily accessible to defendant. There was a large amount of cash and drugs in defendant's home. It was reasonable to infer from this evidence that defendant constructively possessed the gun that was found in his home. There was sufficient evidence to support his conviction for being a felon in possession of a firearm.

## DISPOSITION

The judgment is affirmed.

                                                    NICHOLSON         , Acting P. J.

We concur:

        DUARTE          , J.

        HOCH            , J.

8