Filed 4/18/16  P. v. Bongiovanni CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>ANGELIQUE BONGIOVANNI,<br><br>     Defendant and Appellant. | B260154<br><br>(Los Angeles County<br>Super. Ct. No. PA074926) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dalila C. Lyons, Judge.  Reversed.

Stanley Dale Radtke, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

The trial court found that Angelique Bongiovanni, a convicted felon, violated the terms of her probation by possessing a firearm that police officers found in a closet in her son's bedroom. The court based its ruling on Bongiovanni's statement to the officers during a search of the premises that she cooked for her son and her boyfriend, who both lived in the apartment, and that she cleaned the entire house. We conclude that this statement is not, standing alone, sufficient to prove by a preponderance of the evidence that Bongiovanni constructively possessed the firearm, and reverse the trial court's judgment finding Bongiovanni in violation of probation.

## FACTUAL AND PROCEDURAL BACKGROUND

On the morning of August 21, 2014 Bongiovanni, who had been on active formal probation since a June 2013 conviction for making a criminal threat in violation of Penal Code section 422, subdivision (a),[1] was sitting on the front porch of an apartment in Los Angeles, while her 19- or 20-year-old son Leon George, who was on active parole, was inside in his bedroom with a woman Bongiovanni did not know. Bongiovanni and her boyfriend Carlos Santos subleased a bedroom from George, who was the tenant of the apartment.[2] Bongiovanni and Santos lived in one bedroom, and George lived in the other bedroom. Bongiovanni and Santos shared the responsibility of paying the bills for the apartment, but they kept their personal lives and belongings separate from George.

---

[1]     All statutory references are to the Penal Code.

[2]     The lease was in the name of George and the mother of George's child.

At approximately 7:45 a.m. officers from the Los Angeles Police Department Parole Compliance Unit arrived to search the apartment as part of a probation compliance investigation of Santos. The officers handcuffed Bongiovanni and brought her into the living room of the apartment, and, once they encountered George and his girlfriend, handcuffed them too and proceeded to search the apartment.

Inside a closet in George's bedroom, the officers found a loaded, stainless steel semi-automatic pistol with .45 caliber rounds in the magazine of the gun, along with other magazines and ammunition. The officer found the gun and ammunition inside a plastic container on the floor of the closet in George's bedroom, concealed under a gun box that was covered by folded male clothing. The officers did not find any weapons or ammunition in the bedroom that Bongiovanni shared with Santos.

At one point Bongiovanni told one of the officers that "her son, George, is renting the apartment. She lives in her bedroom with Santos, and that she's trying to be good, that she cleans the entire house and cooks for everyone inside the house." Based on this statement, the one of the officers "formed the opinion that she had access to the entire house, access to all the items and everything that could be inside the house." Based on the officer's recovery of George's California identification card in Bongiovanni's purse and Bongiovanni's statement that she uses the card when she purchases groceries for the house, the officer also formed the opinion that "they share all the items within the home." The officers arrested her and George for violation of section 29800, subdivision (a), possession of a firearm by a person convicted of a felony. After her arrest, Bongiovanni told the officers that she did not know what items her son had in his room, and had no knowledge of the gun and the bullets.

The People filed a motion requesting revocation of Bongiovanni's probation, claiming that she violated her probation by possessing a firearm. The case proceeded to probation violation hearing over two days.

One of the officers, Santos, and Bongiovanni testified at the hearing. Santos stated that Bongiovanni did not spend time in George's room. Bongiovanni stated that she did not clean her adult son's room, she never saw a gun in his room, and never opened any plastic containers his room. Bongiovanni said that, although she could not state truthfully that she had never been in George's room, she only went to the room to get her two-year-old granddaughter or stood at the door to ask a question.

The prosecutor argued that Bongiovanni violated section 29800, subdivision (b), by having constructive custody of the gun found in the closet of George's bedroom, based on her statement to the officer that she cleans the entire house. The prosecutor argued, "In this case, it would be constructive custody. If she does go into her son's room and does clean the room, she has constructive custody of that gun." Counsel for Bongiovanni argued that the only evidence that Bongiovanni had knowledge of or access to the gun was "based on the officer saying she said she cleans the house," which was speculation and not sufficient. Counsel argued, "If a person says 'I clean the house,' that doesn't necessarily mean they clean every room, including other adults' private rooms, and it sure wouldn't lead somebody to believe that she cleans inside plastic tubs, or what not, with lids on them, with folded clothes inside, inside that other person's closet." Counsel argued that "the living arrangements lead to a logical conclusion that she would have no reason to know what was in that [container]."

The trial court found that Bongiovanni had access to the gun, which violated the terms of her probation.[3] The court ruled that, because Bongiovanni "is in violation of probation, the execution of the sentence that was suspended pending successful completion of three years, the sentence is now hereby ordered into full force and effect." When counsel for Bongiovanni asked the court to impose 365 days in county jail and

---

[3]     The court also found that Bongiovanni had violated probation by possessing a Chicago Bears jersey, which is gang paraphernalia for the Columbus Street criminal street gang. The prosecutor conceded, however, that "possession of a single Chicago Bears jersey would not be sufficient to send this defendant to state prison on an execution of . . . suspended sentence, but the firearm [violation] would." The People do not argue that we should affirm the court's probation violation finding on this ground.

4

leave Bongiovanni on probation, the court stated that Bongiovanni "knew what was going to happen if she violated probation. I took her plea. I specifically remember this defendant . . . . I explained to her what execution of sentence suspended is. I do that with all the defendants I sentence. That is very clear. That's what execution of sentence suspended is. You violate probation, then we impose [and] put into effect the sentence that was imposed. So there's no issue about it. She's in violation of probation. I think in this case it is appropriate, given the nature of the violation." The court then imposed the sentence of three years in state prison the court had imposed but suspended when Bongiovanni was convicting of making a criminal threat in June 2013.

## DISCUSSION

"Section 1203.2, subdivision (a), authorizes a court to revoke probation if the interests of justice so require and the court, in its judgment, has reason to believe that the person has violated any of the conditions of his or her probation. [Citation.] When the evidence shows that a defendant has not complied with the terms of probation, the order of probation may be revoked at any time during the probationary period. [Citations.] The standard of proof in a probation revocation proceeding is proof by a preponderance of the evidence." (*People v. Urke* (2011) 197 Cal.App.4th 766, 772, fn. omitted; see *People v. Leiva* (2013) 56 Cal.4th 498, 504-505.) "[A] trial court may not revoke probation unless the defendant willfully violated the terms and conditions of probation." (*People v. Moore* (2012) 211 Cal.App.4th 1179, 1186.) We review a probation revocation decision for substantial evidence. (*Ibid.*; see *People v. Superior Court* (1998) 18 Cal.4th 667, 681; see also *People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1416 [standard of review for a conviction of being a felon in possession of a firearm is substantial evidence].)

5

Possession of a firearm "may be actual or constructive. Actual possession means the object is in the defendant's immediate possession or control. A defendant has actual possession when he himself has the weapon. Constructive possession means the object is not in the defendant's physical possession, but the defendant knowingly exercises control or the right to control the object. [Citation.] Possession of a weapon may be proven circumstantially, and possession for even a limited time and purpose may be sufficient." (*In re Daniel G.* (2004) 120 Cal.App.4th 824, 831.) Where, as here, the charge and the conviction are based on constructive possession, "the prosecution must prove a defendant knowingly exercised a right to control the prohibited item, either directly or through another person. [Citations.] Possession may be shared with others. [Citation.] But mere proximity to the weapon, standing alone, is not sufficient evidence of possession." (*People v. Sifuentes, supra*, 195 Cal.App.4th at p. 1417; see *People v. Elder* (2014) 227 Cal.App.4th 1308, 1313 ["[a] conviction for possession of a gun must be based on intentional actual or constructive possession of the gun [citation], not merely walking nearby"].) The possession, whether it is actual or constructive, must be intentional. (*People v. Sifuentes*, *supra*, 195 Cal.App.4th at p. 1417, fn. 3; see *People v. Jeffers* (1996) 41 Cal.App.4th 917, 922.)

The evidence that Bongiovanni knowingly and directly or indirectly exercised control of, or the right to control, the firearm in the plastic container in George's closet is as follows:

1.      Bongiovanni cleaned the house.

It's a short list, and it does not constitute substantial evidence that Bongiovanni intentionally and knowingly exercised control over the firearm. The fact that Bongiovanni cleaned the house, without more, is not evidence of "reasonable, credible, and of solid value" that she constructively possessed the gun hidden in George's closet.

And there was no more. For example, there was no evidence that George told Bongiovanni where he kept the gun or that she could use it, no evidence that the gun was

6

a "gang gun" kept in a place where members of a criminal street gang could access it when they needed it, no evidence that George and Bongiovanni shared the room where the police found the firearm for a criminal enterprise or otherwise, no evidence that the officers found in George's bedroom any bills, prescriptions, or other documents with Bongiovanni's name on it or any of Bongiovanni's clothing that would suggest she regularly entered the room,[4] and no evidence that the gun was in a common area to which all residents of the apartment had access. The officers did not find the gun in Bongiovanni's bedroom, under her mattress or pillow, or on a nightstand on her side of the bed. (Cf. *People v. Blakely* (2014) 225 Cal.App.4th 1042, 1052 [if "a parolee's residence (in which only he lives) is searched and a firearm is found next to his bed," then "[t]he parolee is in possession of the firearm, because it is under his dominion and control"].) The only evidence was that Bongiovanni cleaned the house. We may speculate that, despite the undisputed evidence that she did not enter George's room or clean his closets, Bongiovanni was such a thorough house cleaner that she vacuumed and dusted every corner of every room, and she straightened and refolded every item in every closet, even inside closed containers and under piles of clothing. Such fanciful speculation, however, is not substantial evidence. (See *People v. Waidla* (2000) 22 Cal.4th 690, 735 ["'speculation is not evidence, less still substantial evidence'"]; *People v. McCloud* (2012) 211 Cal.App.4th 788, 807 ["'[s]peculation is not substantial evidence'"].)

The cases cited by the People, *People v. Mejia* (1999) 72 Cal.App.4th 1269 and *People v. Rice* (1976) 59 Cal.App.3d 998, are, to say the least, distinguishable. In *Mejia* the defendant was charged with possession of a gun within 1,000 feet of a school, in violation of section 626.9. The defendant was in a car that was parked on a street that demarcated the 1,000-foot line around a school, although "at least part of his car was

---

[4]     The officers found George's identification card in Bongiovanni's room. They did not find any items of Bongiovanni's in George's room.

within 1,000 feet of a school at the time the officers first saw him." (*Id.* at p. 1271.) When police officers initiated a traffic stop, the defendant jumped out of his car, fled, and dropped a handgun during the pursuit. (*Ibid.*) In response to a question from the jury, the trial court instructed the jury that it did not matter where within the car the gun was located, as long as "at least part of the car was within the 1000-foot perimeter." (*Ibid.*) The court in *Mejia* held that this instruction was correct and that substantial evidence supported the jury's guilty verdict, in part because, "[a]s the driver and sole occupant of the car, and the only person seen carrying a gun from the scene, defendant had [constructive] possession of the gun in his car." (*Id.* at p. 1272.)

In *Rice* police officers searched a bedroom the defendant shared with his girlfriend and found a sawed-off shotgun in "hollowed-out compartments" of the bed frame of a "home-constructed water bed." (*People v. Rice*, *supra*, 59 Cal.App.3d at p. 1002.) The court held that substantial evidence supported the defendant's conviction for possession of a shotgun because "[t]he defendant admitted constructing the water bed frame with the concealed compartments within which the contraband was found," the defendant "admitted using shotguns for hunting purposes and having in his possession live shotgun shells," and, although the defendant's girlfriend shared the bedroom, there was no evidence that she or anyone else living in the house "had knowledge of the secret storage area." (*Id.* at p. 1003.)

*Mejia* and *Rice* are good examples of evidence showing constructive possession, and by comparison support Bongiovanni's position that there was no such evidence here. In *Mejia*, the defendant was the only one in the car and the gun was in his hand. He obviously had possession of the gun. (*People v. Mejia*, *supra*, 72 Cal.App.4th at p. 1272.) There was no such evidence here. Bongiovanni was sitting on the porch outside the apartment and nowhere near the gun when the officers arrived. In *Rice* the police officers found the shotgun in the defendant's bedroom, hidden in a secret compartment the defendant admitted he constructed, and the defendant admitted he used the shotgun and possessed live shotgun shells. (*People v. Rice*, *supra*, 59 Cal.App.3d at p. 1003.) There was no such evidence here. The officers found the gun in George's room, not

8

Bongiovanni's room, it was hidden in a container in George's closet, and there was no evidence Bongiovanni had anything to do with the container.

**DISPOSITION**

The judgment is reversed.


SEGAL, J.

We concur:


PERLUSS, P. J.


BLUMENFELD, J.[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.