Filed 5/12/26  P. v. Lizotte CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RAYMOND LIZOTTE,<br><br>    Defendant and Appellant. | H052521<br>(Santa Clara County<br>Super. Ct. No. C2402301) |

In 2024, a jury convicted defendant Raymond Lizotte of possession of a firearm by a felon and possession of ammunition by a felon.  Lizotte also admitted to having two strike prior offenses.  The trial court sentenced Lizotte to 32 months in prison.

On appeal, Lizotte claims that apart from an out-of-court statement connecting him to the crime, there was no slight evidence to support a reasonable inference that a crime occurred as required by the corpus delicti requirement.  He further contends that there was insufficient evidence to demonstrate he physically or constructively possessed a gun at the time of the offense.  For the reasons stated below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Charges, Trial, and Sentence*

On June 13, 2024, the Santa Clara County District Attorney's Office filed a first amended information charging Lizotte with possession of a firearm by a felon (Pen. Code[1], § 29800, subd. (a)(1); count 1), and possession of ammunition by a felon (§ 30305, subd. (a)(1); count 2). The complaint additionally alleged that as to count 1, Lizotte was armed with a firearm within the meaning of section 1170.12, subdivision (c)(2)(C)(iii) and was eligible for a three strike life sentence.[2] The complaint further alleged that Lizotte had two previous convictions for attempted robbery (§§ 664, 211), which constituted prior strike offenses (§ 1170.12, subd. (c)(1)).

On June 24, 2024, following a six-day trial, the jury found Lizotte guilty on both counts, but found the section 1170.12 subdivision (c)(2)(C)(iii) allegation to not be true. After the jury entered its verdict, Lizotte admitted both prior strike offenses.

On August 12, 2024, Lizotte appeared for sentencing. The trial court struck one of Lizotte's prior strike offenses and reduced the charge on count 2 to a misdemeanor pursuant to section 17, subdivision (b)[3]. The court subsequently sentenced Lizotte to the following: (1) the lower term of 16 months in prison for possession of a firearm by a felon (count 1), doubled to 32 months based on the prior strike offense; and (2) a

---

[1] Undesignated statutory references are to the Penal Code.

[2] This section provides, in relevant part, that if a defendant has two or more serious or violent prior felony convictions, and the current offense is not for a serious or violent felony, the defendant may still be sentenced to a life sentence if, "[d]uring the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§ 1170.12, subd. (c)(2)(C)(iii))

[3] Pursuant to this section, a crime that is punishable either by imprisonment in the state prison or imprisonment in a county jail can be deemed a misdemeanor by the court under specified circumstances. (§ 17, subd. (b).)

2

concurrent term of one year in county jail for possession of ammunition by a felon (count 2).

Lizotte timely appealed.

## B.      Factual Background

### 1.  Prosecution's Case

#### a.  February 12, 2024 Incident and Investigation

San Jose Police Department Officer Anthony Lira testified that on February 12, 2024, at approximately 3:00 a.m., he and other officers responded to an emergency call-out at an apartment complex located on 7th Avenue in San Jose.  Upon responding to the scene, Lira was guided by a female to apartment number one in the complex, where Lira found a male, later identified as Lizotte, lying inside by the front door with blood coming from his lower body.  Lira's body camera footage, which was played for the jury, also showed an unknown third party standing further inside the apartment.  Lira provided Lizotte with first aid and discovered a gunshot wound on the left side of his pelvis.  Lira conducted a brief search of the apartment, which revealed a "zip gun[4]" in a closet less than one foot away from where Lizotte was located.  Lira indicated that the closet was open, and the firearm was visible from outside the closet door.

Officer Robin Dore-Andrews, who responded to the scene with Lira, testified that in addition to the gunshot wound to Lizotte's pelvis, he (Dore-Andrews) also observed a smaller wound on Lizotte's left buttocks after he was rolled over to check for any further injuries.  On arrival and while performing first aid, Dore-Andrews briefly searched Lizotte's pockets, where he located Lizotte's wallet.  Dore-Andrews later observed a

---

[4] Lira described a zip gun as an improvised firearm.  In addition, under section 17360, a zip gun is defined as a weapon or device that was "made or altered to expel a projectile by the force of an explosion or other form of combustion," but was neither imported as a firearm by a licensed importer nor originally designed to be a firearm by a licensed manufacturer, and has not been subject to taxation.  (§ 17360, subds. (a)–(d).)

3

cigarette[5] and a fragment of a bullet on the floor of the apartment approximately six feet away from Lizotte's feet. Dore-Andrews noted that the zip gun was found in "very close proximity" to where Lizotte was located. After locating the zip gun in the closet, Dore-Andrews removed one spent casing from the zip gun, which he identified as a .22 caliber long rifle round. Dore-Andrews testified that a spent casing is an empty cylindrical piece of metal that would have held the gunpowder contained within a bullet and therefore would remain in a gun after firing. He noted that in contrast, a bullet itself, or a fragment of a bullet like the one located near Lizotte on the scene, would have been ejected from the firearm due to the reaction with the gunpowder.

Dore-Andrews additionally located a black suitcase[6] in the closet where the zip gun was discovered. Inside the suitcase, Dore-Andrews discovered a small black satchel containing six unspent rounds, which appeared to be of the same caliber as the spent casing in the zip gun, a small bag with a white substance that he believed to be a narcotic, and cigarettes; the suitcase also contained a ballistic body armor panel.

Subsequent testing by the Santa Clara County Crime Laboratory revealed that the unspent rounds were .22 caliber long rifle rounds. Although the zip gun had only been tested using .22 caliber short rounds, Steven Webb, the criminalist who had tested the gun, indicated that because the zip gun had a modified barrel, there was no traditional gun chamber, and the .22 caliber long rifle round should be able to fit the zip gun based on the similarities in diameter between that round and the .22 caliber short rounds. On cross-examination, Webb noted that while it was possible to conduct DNA examination

---

[5] Dore-Andrews noted that he did not recall seeing the cigarette upon his initial arrival at the apartment; he also did not recall if anyone had been smoking inside the apartment at the time.

[6] During Dore-Andrews's testimony, he interchangeably referred to this item as both a suitcase and a duffel bag.

on a firearm and ammunition, DNA analysis was not requested or performed in the instant case.

### b. Jail Phone Call

The People admitted into evidence a recording from a phone call that Lizotte had made to a third party while in custody. During the phone call, Lizotte made the following statements:

"I was fuckin' straight set up, dude, I fuckin' knew it. Piece of shit bitch fuckin' got me, dude.

"That fuckin' piece of shit bitch had a—too scared to do it his self. Had his friend fuckin' shoot me with my own fuckin' gun.

"The guy who last had that, so that thing is a pass around, so the guy who last held that shit, he put his little like, like his jacket, he pulled his little sleeves like over his hands looking at it. And he was a fuckin' [unintelligible]. He like sits and like starts pointing that shit at me, like jiggles the fuckin' thing, I go 'What's this for?' Like, like [unintelligible] at the fuckin' thing, pow! I'm like 'Oh, you fuckin' stupid fuck.' That chicken shit bitch stood right over me and fuckin' hit me twice with my own fuckin' shit, that fuckin' pisses me off, dude. That's coward, fool.

"I think the, I think the body armor s—, I think the body armor saved my ass, fool."

When the other caller asked if Lizotte had the body armor on him, Lizotte replied "Yeah, of course."

The parties additionally stipulated that Lizotte had been convicted of offenses that prohibited him from owning or possessing ammunition or firearms. The defense chose not to present any evidence.

## II.    DISCUSSION

### A.    *Corpus Delicti Requirement*

Lizotte claims that the only evidence connecting him to the gun and ammunition was his out-of-court statements made during the jail phone call.  Lizotte asserts that the prosecution failed to establish with independent evidence that a crime occurred, which violated the corpus delicti rule, and the court therefore erred in denying his motion for acquittal on this basis.

### 1.  *Relevant Procedural Background*

After the People finished their presentation of evidence at trial and had rested, Lizotte moved for an acquittal pursuant to section 1118.1.[7]  Lizotte argued that the corpus delicti rule had not been satisfied as to either count because the only evidence of Lizotte's possessory interest in either the firearm or the ammunition was from his out-of-court statements during the jail phone call.  Lizotte argued that there had been no other evidence presented that he had possession of the firearm or ammunition, such as witnesses who had observed these items in his possession or DNA evidence collected from the firearm.  Lizotte further noted that there had been no evidence presented by the People that: (1) Lizotte resided in the apartment where the firearm and ammunition were found; and (2) he owned or had used the suitcase where the ammunition was located.  Lizotte therefore claimed that the only independent evidence connecting him to the firearm and the ammunition was his proximity to them, which was not sufficient to create a reasonable inference of possession or ownership.

---

[7] This section provides as follows: "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal."

6

In response, the People argued that the corpus delicti rule had been satisfied because only a "mere scintilla" of other evidence was required for the proceedings to move forward. The People claimed that the evidence showed the firearm and ammunition were "within an arm's reach" from where Lizotte was found, and the wound he suffered was consistent with the round that had been expended. The People also noted that the cigarettes found in the suitcase were similar to the one found next to Lizotte, thus supporting a reasonable inference that the cigarette had been dislodged from his pocket when the responding officers removed his clothing to perform first aid. Further, the People contended that the presence of the body armor in the suitcase supported a reasonable inference that Lizotte had come to the apartment armed with a loaded firearm and additional protection for himself because there was "some kind of a dispute or possibility of something happening." The People therefore concluded that there were "a number of dots that are reasonable to connect and get us to a reasonable conclusion that [Lizotte] not only possessed the firearm but brought it with him loaded to this location," which was further corroborated by his statements in the jail call.

In reply, Lizotte argued that none of the inferences mentioned by the People were reasonable. Lizotte claimed that it was "much too great" of a "jump" to infer he had possession of the suitcase based on the cigarette being found on the ground near him, particularly when it was unclear where the cigarette came from and there were two other individuals located in the apartment at the same time who had not testified or otherwise been questioned. Lizotte further noted that the gun was found in a small area between the suitcase and the wall, and no blood was found on or near it, it would be a "big leap" to infer that Lizotte had possession of the gun simply because of its proximity to where he was found.

The trial court ultimately denied Lizotte's motion and held that the corpus delicti rule had been satisfied as to both counts. The trial court found that: (1) the gun being within arm's reach of where Lizotte was found; (2) the presence of the cigarette near him;

7

and (3) the presence of cigarettes and ammunition in the suitcase that fit the gun were enough to overcome the slight evidence or reasonable inference requirement. The court specifically noted that the cigarettes inside the suitcase were not dissimilar to the one found next to Lizotte, and both the cigarettes and ammunition were found within the same small pouch inside the suitcase. Further, the court indicated that the gun had clearly been used and fired, and it seemed to have been the cause of Lizotte's injury, based on the bullet fragment found on the scene near him. Lastly, the trial court indicated that the gun was not located in a safe or otherwise secured, but was in the closet with the door open and could be seen from where Lizotte was lying. The trial court therefore concluded that there was "definitely enough without [Lizotte's] statement to take it to the jury. But even with [Lizotte's] statement, it makes it stronger."

The trial court subsequently gave the jury the following instruction regarding Lizotte's out-of-court statement:

"The defendant may not be convicted of any crime based on his out-of-court statements alone. You may rely on the defendant's out-of-court statements to convict him only if you first conclude that other evidence shows that the charged crime or a lesser included offense was committed. That other evidence may be slight and need only be enough to support a reasonable inference that the crime was committed. [¶] This requirement of other evidence does not apply to proving the identity of the person who committed the crime. If other evidence shows that the charged crime or a lesser included offense was committed, the identity of the person who committed it may be proved by the defendant's statement—statements alone. You may not convict the defendant unless the People have proved his guilt beyond a reasonable doubt." (CALCRIM No. 359.)

### 2. *Applicable Legal Principles and Standard of Review*

"In every criminal trial, the prosecution must prove the corpus delicti, or the body of the crime itself—i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause. In California, it has traditionally been held, the prosecution cannot

8

satisfy this burden by relying exclusively upon the extrajudicial statements, confessions, or admissions of the defendant. [Citations.]" (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1168–1169 (*Alvarez*).) The purpose of the corpus delicti rule is "to ensure that one will not be falsely convicted, by his or her untested words alone, of a crime that never happened. [Citations.]" (*Alvarez,* at p. 1169.)

Evidence of the corpus delicti "may be circumstantial and need not be beyond a reasonable doubt, but is sufficient if it permits an inference of criminal conduct, even if a noncriminal explanation is also plausible." (*Alvarez*, *supra*, 27 Cal.4th at p. 1171.) The prosecution is not required to introduce independent evidence " 'of every physical act constituting an element of an offense,' so long as there is some slight or prima facie showing of injury, loss, or harm by a criminal agency. [Citation.]" (*Ibid*.) Once this evidence is present, "the defendant's extrajudicial statement may then be considered for their full value to strengthen the case on all issues. [Citations.]" (*Ibid*.)

"The identity of the individual committing the crime is not a part of the corpus delicti and, thus, the establishment of the corpus delicti does not require proof of the identity of the perpetrator or proof that the person charged committed the offense. [Citation.] Rather, all that need be shown is '*that a crime was committed by someone*.' " (*People v. Nelson* (1983) 140 Cal.App.3d Supp. 1, 3.) In the instance of weapon possession cases, such as this one, "the corpus delicti may be proven by circumstantial evidence and reasonable inferences drawn therefrom. …" (*People v. Wilde* (1947) 82 Cal.App.2d 879, 880–881.)

To satisfy the corpus delicti rule in the instant matter, the prosecution was required to establish a prima facie showing that a person convicted of a felony owned or possessed a firearm (for count 1) and ammunition (for count 2). (*People v. Hilliard* (1963) 221 Cal.App.2d 719, 724.) Proof of possession of a firearm requires knowledge of the firearm and dominion and control over it. (*People v. Pena* (1999) 74 Cal.App.4th 1078, 1083 (*Pena*).) Possession may be actual or constructive and may be jointly shared with

other persons. (*People v. Jeffers* (1996) 41 Cal.App.4th 917, 922 (*Jeffers*).) A person has constructive possession of a firearm that is not in his actual possession when he knowingly maintains, or maintains the right to, dominion and control. (*Pena, supra*, at p. 1083.) In addition, in the event multiple people have dominion or control over the area in question, "possession may be imputed when the contraband is found in a place which is immediately accessible to the joint dominion and control of the accused and another." (*People v. Miranda* (2011) 192 Cal.App.4th 398, 410 (*Miranda*).) Lastly, possession may be established by circumstantial evidence and any reasonable inferences to be drawn from it. (*People v. Williams* (1971) 5 Cal.3d 211, 215.)

When the facts are undisputed, we review de novo whether corpus delicti is satisfied. (*People v. Jones* (1998) 17 Cal.4th 279, 302.) We review the evidence to determine if the " 'slight or prima facie' standard" has been met. (*People v. Jennings* (1991) 53 Cal.3d 334, 368.) In reviewing the ruling on a motion for acquittal, we apply the substantial evidence test. (*People v. Cuevas* (1995) 12 Cal.4th 252, 260–261.) "In applying the substantial evidence rule to a motion under ... section 1118.1, we must, where the trial court has denied the motion, assume in favor of its order the existence of every fact from which the jury could have reasonably deduced from the evidence whether the offense charged was committed and if it was perpetrated by the person or persons accused of the offense. [Citations.] Accordingly, we may not set aside the trial court's denial of the motion on the ground of the insufficiency of the evidence unless it clearly appears that upon no hypothesis whatsoever is there sufficient substantial evidence to support the conclusion reached by the court below." (*People v. Wong* (1973) 35 Cal.App.3d 812, 828.)

10

### 3. The Court Did Not Err in Denying Lizotte's Motion For a Judgment of Acquittal Because There was Sufficient Evidence That the Corpus Delicti Rule Had Been Satisfied

Lizotte argues that his proximity to the gun and ammunition were insufficient to demonstrate possession. He claims the trial court's conclusion that there was a connection between the cigarette found on the floor to the cigarettes and ammunition in the duffel bag and the expended shell casing found in the gun, was speculative and "cannot suffice." He further notes that: (1) he did not reside in the apartment; (2) there were other residents present in the apartment with access to the closet, gun and ammunition; (3) there was no blood found on the gun or the unspent ammunition; and (4) no DNA, fingerprint, or eyewitness evidence linked him to the gun or ammunition.

In reviewing the record, we find that there was at least slight evidence to satisfy the corpus delicti rule for both counts. The investigating officers testified that they found the zip gun and the suitcase containing the ammunition in an open closet next to where Lizotte was located. According to Lira's testimony, there was less than one foot between the closet and Lizotte. In addition, the pouch containing the ammunition also contained cigarettes, and a cigarette was found on the ground next to Lizotte. Based on these facts, the evidence presented could create a reasonable inference that the firearm and the ammunition were in an area that was "immediately accessible to the … dominion and control" of Lizotte, and he therefore could be imputed with constructive possession. (See *Miranda, supra,* 192 Cal.App.4th at p. 410.) Accordingly, we find that the undisputed evidence in the record established the corpus delicti of the offense of being a felon in possession of a firearm and ammunition.

In addition, while we recognize that there may have been other residents in the apartment who had access to the gun and ammunition, this does not somehow alter or defeat the reasonable inference that Lizotte constructively possessed these items. (See *Alvarez, supra,* 27 Cal.4th at p. 1171 [corpus delicti requires evidence which creates a

11

reasonable inference that the harm *could have been caused* by a criminal agency, even in the presence of an equally plausible noncriminal explanation of the harm].) Further, as stated above, the identity of the individual committing the crime is not required to establish the corpus delicti. (See *Nelson, supra,* 140 Cal.App.3d Supp. at p. 3.) We therefore conclude there was sufficient independent evidence to establish the corpus delicti for both crimes such that the trial court did not err in denying Lizotte's motion for acquittal.

### B. Sufficiency of Evidence to Support Convictions

Lizotte next argues that even with his out-of-court statements, there was insufficient evidence to establish that he physically or constructively possessed the gun reasonably close to the time charged in the information. Lizotte claims that because he described the gun as a "pass-around," his statements did not constitute sufficient evidence that he actually had the gun in his immediate possession and control close to the time charged in the information. Lizotte further contends that because the evidence indicated that he had been shot by someone else, he lacked dominion and control over the gun as required to establish constructive possession.

#### 1. Applicable Law and Standard of Review

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) "We must presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence." (*People v. Medina* (2009) 46 Cal.4th 913, 919.) Further we will not set aside a judgment for insufficient evidence unless it clearly appears "that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the jury." (*People v. Hicks* (1982) 128 Cal.App.3d

423, 429.) This standard applies even for a conviction based largely on circumstantial evidence. (*People v. Redrick* (1961) 55 Cal.2d 282, 289.)

Section 29800, subdivision (a)(1) provides that "[a]ny person who has been convicted of a felony . . . and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony." Similarly, section 30305, subdivision (a)(1) provides that "No person prohibited from owning or possessing a firearm … shall own, possess, or have under custody or control, any ammunition or reloaded ammunition." As discussed above, possession can be actual or constructive. (*Jeffers, supra,* 41 Cal.App.4th at p. 922.)

## 2. *Sufficient Evidence Supported The Convictions for Felon in Possession of Firearms and Ammunition*

In reviewing the entire record in the light most favorable to the judgment, we find that there was sufficient evidence to support both convictions. We again point to the evidence that supported a reasonable inference of constructive possession, including: (1) the location of the firearm and the ammunition in an open closet less than one foot away from where Lizotte was found; (2) the bullet fragment found near Lizotte's body and the spent casing, matching the caliber of the ammunition in the suitcase, found inside the zip gun; and (3) the pouch containing the ammunition also contained cigarettes, and a cigarette was found on the ground next to Lizotte only after his pockets had been emptied out by the officers. Further, the ammunition was located inside the suitcase, which also contained the body armor. Such evidence, combined with Lizotte's out-of-court statements that *a gun and body armor related to the shooting belonged to him*, supports our conclusion. Specifically, Lizotte stated: (1) someone had his friend "shoot me with my own fuckin' gun" and this same person "hit me twice in my own fuckin' shit"; and (2) he believed the body armor had "saved" him and confirming that it was on him at the time. It should be noted that the only body armor located at the scene was in the suitcase near the subject ammunition and zip gun. Consequently, we find that there was sufficient

13

circumstantial evidence for the jury to reasonably infer that: (1) the suitcase and the items inside, including the ammunition and body armor, were possessed by Lizotte; and (2) the zip gun was also possessed by Lizotte at or near the time of the offense.

Further, to the extent Lizotte described the gun as a "pass around," this does not negate our conclusion that substantial evidence supported the element of possession. As noted above, possession may be jointly shared with others. (See *Jeffers, supra,* 41 Cal.App.4th 917, 922.) Since Lizotte described the gun both as belonging to him and as a "pass around", "the choice among the several permissible inferences from circumstantial evidence was for the trier of fact, not us." (*People v. Jenkins* (1979) 91 Cal.App.3d 579, 584.) Therefore, a jury could both conclude that the zip gun was a "pass around" and was also in the constructive possession of Lizotte at the time of the shooting. Accordingly, we conclude that substantial evidence supported Lizotte's convictions for felon in possession of a firearm and felon in possession of ammunition.

### III.    DISPOSITION

The judgment is affirmed.

_____
Wilson, J.

WE CONCUR:

_____
Grover, Acting P. J.

_____
Lie, J.

*People v. Lizotte*
H052521